John R. Keough, III (JK 6013)
John R. Foster (JF 3635)
Cody D. Constable (CC 6659)
**WAESCHE, SHEINBAUM & O'REGAN, P.C.**
Attorneys for Plaintiffs
SOUTH PACIFIC SHIPPING CO. LTD.
and PACIFIC FRUIT INC.
111 Broadway, 4th Floor
New York, New York 10006
(212) 227-3550

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                **ECF CASE**
------------------------------------------------------------------X
SOUTH PACIFIC SHIPPING CO. LTD.
(d/b/a Ecuadorian Line) and PACIFIC FRUIT INC.,        07 Civ. 6317 (GEL)(KNF)

                      Plaintiffs,

                                                                                           **COMPLAINT**

       -against-

NEW YORK CONTAINER TERMINAL, INC.,

                      Defendant.
------------------------------------------------------------------X

Plaintiffs, South Pacific Shipping Co. Ltd. (d/b/a Ecuadorian Line) ("South Pacific") and Pacific Fruit Inc. ("Pacific Fruit"), by their attorneys, Waesche, Sheinbaum & O'Regan, P.C., complaining of the defendant, New York Container Terminal, Inc. ("NYCT"), allege upon information and belief as follows:

**PARTIES AND JURISDICTION**

1. This is a case of admiralty and maritime jurisdiction and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Plaintiff South Pacific was and now is a corporation duly organized and existing under the laws of Bermuda, with an office and place of business at Charlotte House, Second Floor, Charlotte Street, Nassau, Bahamas.

3. Plaintiff Pacific Fruit at all material times was and now is a corporation organized and existing under the laws of the State of Delaware, with an office and place of business at 300 Western Avenue, Staten Island, New York 10303.

4. Defendant NYCT at all material times was and now is a corporation organized and existing under the laws of the State of New York, with an office and principal place of business at 300 Western Avenue, Staten Island, New York 10303, and at all relevant times was, is, and/or will be doing business in this District and within the jurisdiction of this Honorable Court.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

6. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all claims in this action that are so related to claims within this Court's original jurisdiction as to form part of the same case or controversy under Article III of the United States Constitution.

### FIRST CAUSE OF ACTION: BREACH OF MARITIME CONTRACT

7. South Pacific operates vessels engaged in the ocean carriage of bananas and other perishable cargoes from ports in Ecuador to various ports in the world, including the port of New York.

8. Pacific Fruit imports fresh bananas and other perishable cargoes into the port of New York, and owns such perishable fruit cargoes carried on board South Pacific's vessels and delivered at the port of New York.

9. NYCT is engaged in the business of marine terminal operation and stevedoring, including the berthing, discharge, and handling of vessels carrying perishable cargoes on the navigable waters of the United States, and operates the New York Container Terminal (formerly known as the Howland Hook Container Terminal) (the "Terminal") at Staten Island, New York.

10. On or about April 29, 1997, South Pacific (d/b/a Ecuadorian Line) entered into a Terminal Operating, Stevedoring and CFS Service Agreement ("the Stevedoring Contract") with Howland Hook Container Terminal, Inc. ("Howland Hook"), a predecessor entity to NYCT.

11. The Stevedoring Contract provides, among other things, that Howland Hook would provide terminal operating and stevedoring services to South Pacific, including the discharge and handling of cargoes of perishable fruit from South Pacific's vessels.

12. On or about December 5, 2006, South Pacific agreed to renew the Stevedoring Contract for an additional term of five (5) years, and signed a Confidential Rate Schedule dated October 1, 2005 ("the Confidential Rate Schedule").

13. On or about December 26, 2006, NYCT agreed to renew the Stevedoring Contract for an additional term of five (5) years, and signed the Confidential Rate Schedule.

14. By letter dated March 30, 2007, NYCT's president and CEO, James J. Devine, notified South Pacific that NYCT would require it to pay NYCT an additional $80,000.00 per month, "retroactive to the first of the year."

15. The Stevedoring Contract does not authorize NYCT to demand an additional $80,000.00 per month from South Pacific.

16. The parties to the Stevedoring Contract never mutually consented to modify the contract to allow NYCT to charge South Pacific an additional $80,000.00 per month.

17. On or about May 23, 2007, NYCT's president and CEO, Mr. Devine, informed South Pacific through its agent, Ecuadorian Line, Inc., that unless South Pacific immediately paid NYCT $240,000, NYCT would stop unloading the cargo of fresh bananas and other perishable cargoes from the M/V INDIAN OCEAN, a South Pacific vessel then docked at the Terminal.

18. Pacific Fruit owned perishable cargoes on board the M/V INDIAN OCEAN.

19. South Pacific was contractually obligated by its contracts of carriage with Pacific Fruit and other cargo owners to deliver the cargo at NYCT in the port of New York and was not able to use any other ocean terminal facility to unload the M/V INDIAN OCEAN cargo.

20. South Pacific, through its agent, Ecuadorian Line, Inc., paid to NYCT under protest the sum of $240,000 demanded by NYCT so that NYCT would unload the INDIAN OCEAN cargo, and South Pacific could thereby deliver the cargo as required by its contracts of carriage and prevent loss of or damage to such cargo.

21. Other vessels operated by South Pacific are scheduled to make regular calls on a weekly basis at NYCT's Terminal to discharge cargoes of fresh bananas and other perishable cargoes ("the Perishable Cargoes") owned by Pacific Fruit and other shippers or receivers.

22. South Pacific is not obligated to pay the additional $80,000.00 per month demanded by NYCT.

23. The Stevedoring Contract guarantees that NYCT will berth and provide stevedoring services to South Pacific's vessels on Wednesdays, Thursdays, and Fridays.

24. The parties to the Stevedoring Contract never mutually agreed to change the guaranteed days for berthing and related services stated in the contract.

25. On or about May 23 and on various dates thereafter, NYCT's Mr. Devine informed South Pacific that, beginning in August 2007, South Pacific's vessels would have to berth at NYCT's Terminal on Tuesdays and Wednesdays only, and that NYCT would refuses to accept the vessels for berthing and related stevedoring services on Thursdays and Fridays despite the guarantee of such days in the Stevedoring Contract.

26. South Pacific has entered into contracts of carriage with Pacific Fruit and other shippers or receivers of cargo to carry the Perishable Cargoes to the port of New York.

27. Pacific Fruit has obtained approval of the U.S. Department of Homeland Security to ship its bananas and other perishable cargoes to the port of New York.

28. No other port facility in the New York area can discharge and handle Pacific Fruit's Perishable Cargoes.

29. If NYCT fails to perform its duties under the Stevedoring Contract, the Perishable Cargoes will not be unloaded and delivered on schedule and will ripen, rot, and become unmarketable and unfit for human consumption.

30. NYCT's refusal to berth South Pacific vessels and perform related services pursuant to the Stevedoring Contract will prevent performance of South Pacific's contracts of carriage; will cause loss or damage to Pacific Fruit's Perishable Cargoes on board; will prevent Pacific Fruit from supplying bananas to its customers in the New York area and

elsewhere in the Northeast; and otherwise threatens irreparable harm to Pacific Fruit and South Pacific.

33. By such conduct, NYCT has breached its contractual duties to South Pacific under the Stevedoring Contract.

32. By such conduct, NYCT has breached its contractual duties to Pacific Fruit, which is an intended third-party beneficiary of the Stevedoring Contract.

## SECOND CAUSE OF ACTION:
## <u>TORTIOUS INTERFERENCE WITH MARITIME CONTRACTS</u>

33. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 32 herein with the same force and effect as if set forth at length.

34. By such conduct, NYCT has wrongfully interfered and/or will wrongfully interfere with South Pacific's contracts of carriage with Pacific Fruit and other shippers, and has harmed and/or will harm plaintiffs by wrongfully preventing South Pacific from performing its contractual obligations under the contracts of carriage to deliver the Perishable Cargoes at the port of New York.

35. By such conduct, NYCT has wrongfully interfered and/or will wrongfully interfere with Pacific Fruit's contracts for sale of the Perishable Cargoes, and has harmed and/or will harm Pacific Fruit by wrongfully preventing Pacific Fruit from performing its contractual obligations to deliver the Perishable Cargoes to its customers in the New York area and elsewhere in the Northeast.

## THIRD CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

36. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 35 herein with the same force and effect as if set forth at length.

37. Pacific Fruit has a business relationship with its customers and prospective customers who purchase bananas and other perishable cargoes from Pacific Fruit in the New York area and elsewhere in the Northeast.

38. NYCT has wrongfully interfered and/or will wrongfully interfere with such business relationships.

39. NYCT has acted carelessly and with a reckless disregard for the rights and business relationships of Pacific Fruit, and/or has used unfair and/or improper means to harass plaintiffs.

40. NYCT's conduct has injured and/or will injure such business relationships of Pacific Fruit and business relationships between South Pacific and its customers.

41. By such conduct, NYCT has tortiously interfered and/or will tortiously interfere with prospective business relations of plaintiffs causing plaintiffs loss of business reputation and other losses that cannot yet be quantified.

## FOURTH CAUSE OF ACTION:
## UNJUST ENRICHMENT

42. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 41 above as if fully set forth herein.

43. By wrongfully demanding and accepting the sum of at least $240,000.00 not authorized by the Stevedoring Contract, NYCT has been unjustly enriched.

**WHEREFORE**, Plaintiffs pray that this Honorable Court:

A. Issue a temporary restraining order enjoining, individually, jointly and severally, NYCT and its officers, agents, servants, attorneys, successors and assigns, and all persons, firms, corporations and entities in active concert or participation with NYCT who receive actual notice of the order by personal service or otherwise, pending further order of this Court, from refusing or failing in any way to perform NYCT's contractual duties to South Pacific pursuant to the Terminal Operating, Stevedoring and CFS Agreement dated April 29, 1997, as amended by the Confidential Stevedoring Rate Schedule for Ecuadorian Line dated October 1, 2005, including but not limited to providing the services set forth in paragraph (D)(i) through (vii) below; from requiring payment of the alleged extra handling charge or monthly surcharge of $80,000 per month or any other amount for such an alleged charge; from delaying or causing delay in unloading the cargoes from South Pacific's vessels; and from interfering with or causing interference with the South Pacific's vessels and/or the perishable cargoes of Pacific Fruit or the cargoes of such vessels at the port of New York;

B. Enter judgment in favor of South Pacific and against NYCT for $240,000.00, plus interest and the costs of this action, including a reasonable allowance for attorneys' fees;

C. Enter judgment that NYCT's refusal to perform under the Stevedoring Contract unless South Pacific pays NYCT an additional $80,000.00 per month constitutes a material breach of NYCT's obligations under the Stevedoring Contract;

D. Issue a preliminary injunction and/or permanent injunction ordering that NYCT and its officers, agents, servants, attorneys, successors and assigns, and all persons, firms, corporations and entities in active concert or participation with NYCT who receive actual notice

of this order by personal service or otherwise, are enjoined, individually, jointly and severally, to continue to perform NYCT's contractual duties to South Pacific pursuant to the Terminal Operating, Stevedoring and CFS agreement dated April 29, 1997, as amended by the Confidential Stevedoring Rate Schedule for Ecuadorian Line, dated October 1, 2005, without requiring payment of the alleged extra handling charge or monthly surcharge of $80,000 per month or any other amount for such an alleged charge, including but not limited to providing:

(i) Terminal services, stevedoring and breakbulk cargo handling services and container freight station services, for breakbulk cargo and containers to be loaded onto or discharged from the vessels owned, operated, chartered or controlled by South Pacific;

(ii) A single berth, located at the south end of the wharf at the New York Container Terminal and of adequate length to dock vessels on arrival guaranteed on Wednesdays, Thursdays and Fridays, and on other days, to give South Pacific's vessels priority for a berth, to make available at least one crane, and to make every effort to make a second berth available should South Pacific require it;

(iii) Adequate yard space for receiving, delivering, parking, sorting, consolidating and handling loaded and empty containers on chassis and without chassis, as required;

(iv) Shoreside container gantry cranes suitable to handle containers up to 40 tons capacity;

(v) Stevedoring and terminal operating services upon arrival of South Pacific's vessels on Wednesdays, Thursdays and Fridays; adequate warehouse space, temperature and humidity controlled, adequate handling equipment and personnel in the on-dock

container freight station to accommodate South Pacific's perishable cargo requirements, including truck loading;

    (vi) Labor, supervision, normal watching services and terminal services;

    (vii) Stevedoring services on a 24-hour-a day, 7-day-a-week basis consistent with the International Longshoremen's Association collective bargaining agreement and the customs and practices currently existing within the port;

and from refusing or failing in any way to perform its contractual duties to South Pacific pursuant to the Terminal Operating, Stevedoring and CFS Agreement dated April 29, 1997, as amended by the Confidential Stevedoring Rate Schedule for Ecuadorian Line dated October 1, 2005; from requiring payment of the alleged extra handling charge or monthly surcharge of $80,000 per month or any other amount for such an alleged charge; from delaying or causing delay in the unloading of the cargoes; and from interfering with or causing interference with South Pacific's vessels and/or the perishable cargoes of Pacific Fruit or the cargoes of such vessels at the port of New York; and

    E. Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
   July 10, 2007

            **WAESCHE, SHEINBAUM & O'REGAN, P.C.**
            Attorneys for Plaintiffs
            SOUTH PACIFIC SHIPPING CO. LTD. and
            PACIFIC FRUIT INC.

            By: _____/s/_____
              John R. Keough, III (JK 6013)
              John R. Foster (JF 3635)
              Cody D. Constable (CC 6659)
              111 Broadway, 4th Floor
              New York, New York 10006
              (212) 227-3550