UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SOUTH PACIFIC SHIPPING CO. LTD (d/b/a
Ecuadorian Line) and PACIFIC FRUIT INC.,

                Plaintiffs,                Docket No.: 07 Civ. 6317 (GEL)

    - against -

NEW YORK CONTAINER TERMINAL, INC.,
                Defendant.
------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF REQUEST FOR SECURITY PURSUANT
TO F.R.C.P. 65(C) AND RESPONSE TO PLAINTIFFS'
APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

{NY061215.1 }

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SOUTH PACIFIC SHIPPING CO. LTD (d/b/a
Ecuadorian Line) and PACIFIC FRUIT INC.,

                        Plaintiffs,                    Docket No.: 07 Civ. 6317 (GEL)

- against -

NEW YORK CONTAINER TERMINAL, INC.,
                      Defendant.
------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR SECURITY PURSUANT TO F.R.C.P. 65 (C) AND RESPONSE TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

       Defendant New York Container Terminal ("NYCT") respectfully submits this memorandum in support of its motion to require plaintiffs South Pacific Shipping Co., Ltd. (d/b/a Ecuadorian Line) ("South Pacific") and Pacific Fruit Inc., ("Pacific Fruit") to post $1,000,000 in security, pursuant to F.R.C.P. 65 (c ), before this Court issues a temporary restraining order on plaintiffs' application.

       Plaintiffs are shippers and carriers of bananas, fruit, and other cargoes on scheduled voyages from Ecuador to New York (the "Service"). Defendant operates a container terminal in Staten Island, New York which has specialized facilities for, but limited capacity to accommodate, breakbulk cargo (i.e., non-containerized cargo). Plaintiff South Pacific and defendant are parties to a certain Terminal Operating, Stevedoring and CFS ["Container Freight Station"] Service Agreement, dated April 29, 1997, as amended by the Confidential Rate Schedule for Ecuadorian Line, dated October 1, 2005 and signed in December 2006 (the "Agreement"). See Declaration of Mark M. Jaffe ("Jaffe Decl.") ¶¶ 3-5 and Ex. A.

Following, and almost immediately after the execution of the Agreement, in January 2007 plaintiffs effected changes in their ship deployments whereby they withdrew previously preponderantly containerized vessels from the Service and replaced them with preponderantly breakbulk vessels. This meant that the quantities of bananas being shipped in containers were radically reduced and the quantity of bananas being shipped as breakbulk cargo (palletized boxes) were radically increased. This increase is illustrated by the following table, based on data already provided to plaintiffs. Jaffe Decl. ¶ 6 and Ex. B.

| Comparison Chart | | | |
|---|---|---|---|
| Month | 2006 Pallets | 2007 Pallets | Change |
| Jan. 2007 | 5,618 | 13,939 | +248.11% |
| Feb. 2007 | 3,882 | 15,737 | +405.38% |
| March 2007 | 8,643 | 19,946 | +230.78% |
| April 2007 | 7,328 | 16,031 | +218.76% |
| May 2007 | 10,481 | 19,163 | +182.84% |

Plaintiff South Pacific's unilateral decision to change the types of vessels it used to deliver its cargo to defendant's terminal has resulted, so far in 2007, in more than double the amounts of pallets to be discharged from plaintiffs' vessels over the amounts handled during a comparable period in 2006. This change was not contemplated by defendant when it signed the Agreement in December, 2006, and has resulted in an inherently unreasonable increase in output of pallets to be handled in breach of the Agreement and of the implied contract of good faith and fair dealing. Jaffe Decl. ¶ 7.

As defendant has repeatedly advised plaintiffs, both directly and through counsel and will establish as a matter of fact at any hearing on a preliminary injunction, the costs to a container terminal operator of handling breakbulk cargo versus containerized cargo is substantially greater, particularly for cargoes such as bananas and other fresh fruit. Those extra costs range from loss of labor productivity, increased equipment usage, and even waste removal. Jaffe Decl. ¶ 8.

When it became clear that plaintiffs had withdrawn all of their predominantly containerized vessels from the Service and intended to substitute primarily breakbulk vessels, defendant requested cost adjustments from plaintiffs. When plaintiffs declined, defendant threatened to withhold services and plaintiffs ultimately paid $240,000 to provisionally compensate defendant for three months' of extra costs. Plaintiffs declined, however, to pay any further compensation whereupon defendant issued warnings that it could not continue to handle the vessels without additional compensation for the extra costs. Jaffe Decl. ¶ 9.

Defendant initially was served a copy of plaintiffs' order to show cause papers seeking a temporary restraining order on July 11, 2007. Appended to these papers was a draft order to show cause for a preliminary injunction and temporary restraining order. Jaffe Decl. ¶ 10 and Ex.C. This draft order contained a handwritten provision that stated "ordered that security in the amount of $_____ be posted by _____, 2007." Plaintiffs notified defendant's counsel by telephone on July 11, 2007 that in the absence of Your Honor, they had been referred to Judge Stein and that a hearing would be held forthwith at time available by all counsel. Jaffe Decl. ¶ 11.

Shortly after receipt of these papers, defendant's counsel contacted plaintiffs' counsel to attempt to resolve the need for a temporary restraining order and/or preliminary injunction.

The parties agreed that, in return for NYCT working plaintiffs' vessels through September, 2007 plaintiffs would provide security in the amount of $1 million to cover defendant's exposure as it continued to incur increased costs and to secure NYCT's contract claims through September, 2007. Jaffe Decl. ¶ 12 and Ex. D.

The letter confirming this agreement stated:

"1.    Without prejudice to its claims for compensatory damages, defendant will work the following vessels:

> M/V DUNCAN ISLAND    Due July 12, 2007
> M/V ATLANTIC OCEAN   Due July 18, 2007
> M/V ARCTIC OCEAN     Due July 26, 2007
> M/V HOOD ISLAND      Due August 3, 2007

2.    In return and to refrain from arresting such vessels, their cargo and freights defendant expects to receive a Club Letter or comparable security in the amount of $1 Million to secure defendant's claims through the call on August 3rd of the HOOD ISLAND and for further vessel calls through the months of August and September, 2007.

3.    As previously notified to your clients, defendant is presently assessing the cost of the service changes made unilaterally by your clients as and from January, 2007. However, attached preliminarily is a schedule showing the productivity losses sustained by defendant through May, 2007 by reason of these service changes made by your clients. It is our understanding that such losses are continuing at the rate of at least $80,000 per month.

4.    Hopefully, between now and the end of September our clients will be able to resolve their disputes either commercially or by arbitration. Also to be resolved is the question of the days on which vessel calls occur and time now being required for discharge.

5.    We have filed a Notice of Appearance on behalf of defendant and look forward to your confirmation by tomorrow that the Club Letter will be forthcoming."

See Jaffe Decl. ¶ 13 and Ex. E.

In return for this agreement, plaintiffs' counsel advised this Court that there was no current need for a temporary restraining order to issue.

Meanwhile, defendant continued to work plaintiffs' vessels. Defendant also provided plaintiffs' counsel with documentation supporting its calculations of the additional costs it was

incurring due to plaintiffs' breach of the parties' Agreement, so that plaintiffs could obtain a "Club letter" as security from one of their Protection and Indemnity (P & I") Clubs. This documentation (Ex. F to Jaffe Decl.) supported defendant's claim that it was incurring increased monthly costs, due to plaintiffs' breach, that were *much greater* than the $80,000 per month defendant had previously estimated. However, defendant agreed to accept a security of only $1 million ($1,000,000) to cover its claims through September, 2007. Jaffe Decl. ¶ 14 and Ex. F. When plaintiffs' counsel inquired as to what other forms of security could be posted, defendant's counsel advised that a usual form of letter of credit or bond or cash would serve the same purpose. Jaffe Decl. ¶ 14 and Ex. G.

On July 20, 2007, plaintiffs' counsel advised defendant's counsel that plaintiffs had been unable to obtain a Club letter from one of plaintiffs' P & I Clubs and were unwilling to agree to the terms requested by another of plaintiffs' P & I Clubs. Plaintiffs' counsel also advised defendant's counsel that: 1) they had scheduled a court conference on their motion for temporary restraining order before this Court for Tuesday, July 24th at 11:00 am; and 2) they intended on Tuesday to move for their TRO and to schedule a hearing on their motion for preliminary injunction. Plaintiffs' counsel confirmed this message in an e-mail dated July 21, 2007. Jaffe Decl. ¶¶ 14-17 and Ex. H.

It is beyond controversy that defendant will continue to incur losses each time it has to provide labor and services to plaintiffs' vessels and that Rule 65 of the F.R.C.P. requires plaintiffs to provide security before the Court issues a Temporary Restraining Order on plaintiffs' Application. As the matter will likely go to arbitration, the relief requested by defendant at this time is straightforward: plaintiffs should be required to post security in satisfactory form to the extent that a temporary restraining order is granted. Defendant has

provided plaintiffs with evidence that security in the amount of at least $1 million is appropriate in order to cover defendant's claims for increased costs due to plaintiff's breach of the Agreement. Jaffe Decl. ¶¶ 18-19.

### A. Defendant Does not Object to the Issuance of a TRO Provided the Court Requires Plaintiff to Post Security in the Amount of $1 Million Pursuant to F.R.C.P. 65(c)

F.R.C.P. 65(c) provides, in pertinent part:

> **(c) Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

A party has been "wrongfully enjoined," for purposes of this rule, if it is ultimately found that enjoined party had at all times the right to do the enjoined act. *Guzman v. Local 32B-32J, Service Employees Intern. Union, AFL-CIO,* 72 F.3d 260 (2d Cir. 1995). Inasmuch as damages caused by an erroneous TRO or injunction cannot exceed the amount of the bond posted as security, and because an error in setting the bond too high is not serious, a district court should err on the high side when setting a bond. *Manpower Inc. v. Mason,* 405 F.Supp.2d 959 (E.D.Wis.2005).

In January, 2007 plaintiff South Pacific unilaterally decided to change the types of vessels it used to deliver its fruit to defendant's terminal resulting in more than double the number of pallets to be processed over the amounts processed during a comparable period in 2006. This change resulted in substantially increased costs to defendant ranging from loss of labor productivity, increased equipment usage, and even waste removal. The change in vessels was not contemplated by defendant when it signed the revised Agreement with plaintiff South Pacific in December, 2006, resulted in an inherently unreasonable increase in output of pallets

to be processed that breached the parties' contract, and constituted a breach of the implied contract of good faith and fair dealing.

Defendant provided to plaintiffs evidence that, because of the extra labor and other expenditures it has been required to make due to plaintiffs' breach, defendant was incurring additional unforeseen costs of *at least* $ 80,000 on a monthly basis—and was likely incurring a much greater monthly amount. Plaintiffs' counsel, while disputing defendant's right to recover this amount from plaintiffs, apparently does not contest the fact that defendant is incurring extra costs in this quantum, since it agreed to seek security in the amount of $1 million to cover defendant's claims for additional costs incurred through September due to plaintiffs' breach.

Since FRCP 65 (c) requires that the applicant must give security before issuance of a TRO or preliminary injunction sufficient to cover the damages of a wrongfully restrained party, and since the defendant has provided evidence that, if found to be "wrongfully restrained" (i.e., wrongfully required to process plaintiffs' fruit without additional payment) it is entitled to at least $1 million to compensate for its additional costs, security in the amount of $1 million is appropriate.

### B. Defendant Reserves the Right to Submit its Arguments Why a Preliminary Injunction Should not Issue

Plaintiffs' counsel advised defendant's counsel that on July 24, 2007, it seeks to have this Court issue a temporary restraining order and schedule a hearing on its motion for preliminary injunction. Jaffe Decl. ¶¶ 14-17 and Ex. H. For this reason, defendant is not at this time filing a brief in opposition to plaintiffs' motion for preliminary injunction. However, defendant does not concede that plaintiffs have met the requirements for a preliminary injunction, and reserves the right to submit its arguments why a preliminary injunction should not issue prior to the date of the scheduled preliminary injunction hearing.

Dated: New York, New York
July 23, 2007

        HILL, BETTS & NASH LLP

        By: _____/s/_____
        Mark M. Jaffe (MJ-4855)
        Elizabeth A. McCoy (EM-8448)
        Gordon S. Arnott (GSA-8612)
        Attorneys for Defendant
        One World Financial Center
        200 Liberty Street, 26th Floor
        New York, New York 10281-1003
        (212) 839-7000
        (212) 466-0514 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July 2007, a copy of the foregoing Memorandum of Law in Support for Request for Security Pursuant to F.R.C.P. 65 ( c) and Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, and Declaration of Mark M. Jaffe with exhibits was served by e-mail and overnight mail upon plaintiffs' attorneys addressed as follows:

j.keough@waeschelaw.com

j.foster@waeschelaw.com

John R. Keough, III
John R. Foster
Waeche, Sheinbaum & O'Regan
111 Broadway, 4th Floor
New York, NY 10006
(212) 227-3550

By: _____
Elizabeth A. McCoy (EAM-8448)
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel. (212) 839-7000
Fax (212) 466-0514