Mark M. Jaffe (MJ-4855)
Elizabeth A. McCoy (EAM-8448)
Gordon S. Arnott (GSA-8612)
**HILL, BETTS & NASH LLP**
*Attorneys for Defendant*
NEW YORK CONTAINER TERMINAL, INC.
One World Financial Center
200 Liberty Street, 26th Floor
New York, NY 10281
(212) 839-7000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
SOUTH PACIFIC SHIPPING CO. LTD
(d/b/a Ecuadorian Line) and PACIFIC FRUIT,
INC.

               Plaintiffs,

    - against -

NEW YORK CONTAINER TERMINAL,
INC.

               Defendant.
-------------------------------------------------------x

Case No. 07 Civ. 06317 (GEL)

**DECLARATION OF
MARK M. JAFFE**

Mark M. Jaffe declares as follows:

1.    I am a member of Hill, Betts & Nash LLP, attorneys for defendant, New York Container Terminal, Inc., in this action.

2.    I submit this declaration in support of Defendant's Memorandum in Support of Request for Security Pursuant to F.R.C.P. 65(c) and response to Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction.

3.    Plaintiffs are shippers and carriers of bananas, fruit, and other cargoes on scheduled voyages from Ecuador to New York (the "Service").

4.      Defendant operates a container terminal in Staten Island, New York which has specialized facilities for, but limited capacity to accommodate, breakbulk cargo (i.e., non-containerized cargo).

5.      Plaintiff South Pacific and defendant are parties to a certain Terminal Operating, Stevedoring and CFS ["Container Freight Station"] Service Agreement, dated April 29, 1997, as amended by the Confidential Rate Schedule for Ecuadorian Line, dated October 1, 2005 and signed in December 2006 (the "Agreement"). The Agreement contains an arbitration clause. A copy of the Agreement is annexed hereto as Exhibit "A."

6.      Following, and almost immediately after the execution of the Agreement, in January 2007 plaintiffs effected changes in their ship deployments whereby they withdrew previously preponderantly containerized vessels from the Service and replaced them with preponderantly breakbulk vessels. This meant that the quantities of bananas being shipped in containers were radically reduced and the quantity of bananas being shipped as breakbulk cargo (palletized boxes) were radically increased. Such increase is readily illustrated by the following table, based on data already provided to plaintiffs. (Exhibit "B" hereto)

| Comparison Chart | | | |
|---|---|---|---|
| Month | 2006 Pallets | 2007 Pallets | Change |
| Jan. 2007 | 5,618 | 13, 939 | +248.11% |
| Feb. 2007 | 3,882 | 15,737 | +405.38% |
| March 2007 | 8,643 | 19,946 | +230.78% |
| April 2007 | 7,328 | 16,031 | +218.76% |
| May 2007 | 10,481 | 19,163 | +182.84% |

7.      Plaintiff South Pacific's unilateral decision to change the types of vessels it used to deliver its cargo to defendant's terminal has resulted so far in 2007 in more than double the amounts of pallets to be discharged from plaintiffs' vessels over the amounts handled during a comparable period in 2006. This change was not contemplated by defendant when it signed the

Agreement in December, 2006, and has resulted in an inherently unreasonable increase in output of pallets to be handled in breach of the Agreement and of an implied contract of good faith and fair dealing.

8. As defendant has repeatedly advised plaintiffs, both directly and through counsel and will establish as a matter of fact at any hearing on a preliminary injunction, the costs to a container terminal operator of handling breakbulk cargo versus containerized cargo is substantially greater, particularly for cargoes such as bananas and other fresh fruit. As defendant has endeavored to reinforce to plaintiffs, those extra costs range from loss of labor productivity, increased equipment usage, and even waste removal.

9. When it became clear that plaintiffs had withdrawn all of their predominantly containerized vessels from the Service and intended to substitute primarily breakbulk vessels, defendant requested cost adjustments from plaintiffs. When plaintiffs declined, defendant threatened to withhold services and plaintiffs ultimately paid $240,000 to provisionally compensate defendant for three months' of extra costs. Plaintiffs declined, however, to pay any further compensation whereupon defendant issued warnings that it could not continue to handle the vessels without additional compensation for the extra costs.

10. On July 11, 2007, plaintiffs made application for a Temporary Restraining Order (the "Application"), which included the language: "ordered that security in the amount of $_____ be posted by _____, 2007." (Exhibit "C" hereto)

11. Plaintiffs notified defendant's counsel by telephone on July 11, 2007 that in the absence of Your Honor, they had been referred to Judge Stein and that a hearing would be held forthwith at time available by all counsel.

12. Upon receipt of telephonic and fax notice of the Application and service of the form of the Order, I contacted plaintiffs' counsel to attempt to resolve the need for a temporary restraining order and/or preliminary injunction. Plaintiffs confirmed that, in return for NYCT working plaintiffs' vessels through September 2007, plaintiffs would use their "best efforts" to provide security via a Club Letter in the amount of $1 million to cover defendant's exposure as it continued to incur increased costs and secure NYCT's contract claims through such date. (Exhibit "D" hereto)

13. I then sent plaintiffs' counsel a counter-letter on July 11, 2007 confirming defendant's understanding of agreement (Exhibit "E" hereto). This letter stated:

> 1. Without prejudice to its claims for compensatory damages, defendant will work the following vessels:
>
> | | |
> |---|---|
> | M/V DUNCAN ISLAND | Due July 12, 2007 |
> | M/V ATLANTIC OCEAN | Due July 18, 2007 |
> | M/V ARCTIC OCEAN | Due July 26, 2007 |
> | M/V HOOD ISLAND | Due August 3, 2007 |
>
> 2. In return and to refrain from arresting such vessels, their cargo and freights defendant expects to receive a Club Letter <u>or comparable security</u> in the amount of $1 Million to secure defendant's claims through the call on August 3rd of the HOOD ISLAND and for further vessel calls through the months of August and September, 2007. (emphasis added)
>
> 3. As previously notified to your clients, defendant is presently assessing the cost of the service changes made unilaterally by your clients as and from January, 2007. However, attached preliminarily is a schedule showing the productivity losses sustained by defendant through May, 2007 by reason of these service changes made by your clients. It is our understanding that such losses are continuing at the rate of at least $80,000 per month.
>
> 4. Hopefully, between now and the end of September our clients will be able to resolve their disputes either commercially or by arbitration. Also to be resolved is the question of the days on which vessel calls occur and time now being required for discharge.

5.      We have filed a Notice of Appearance on behalf of defendant and look forward to your confirmation by tomorrow that the Club Letter will be forthcoming.

14.     Meanwhile, defendant continued to work plaintiffs' vessels. Defendant also provided plaintiffs' counsel with documentation supporting its calculations of the additional costs it was incurring due to plaintiffs' breach of the parties' Agreement, so that plaintiffs could obtain a "Club letter" as security from one of their Protection and Indemnity (P & I") Clubs. This documentation is attached as Exhibit "F." This documentation supports defendant's claim that it was incurring increased monthly costs, due to plaintiffs' breach, that were *much greater* than the $80,000 per month defendant had previously estimated. However, defendant agreed to accept a security of only $1 million to cover its claims through September, 2007. When plaintiffs' counsel inquired as to what other forms of security could be posted, defendant's counsel advised that a usual form of letter of credit or bond or cash would serve the same purpose. (Exhibit "G" hereto).

15.     On July 20, 2007, plaintiffs' counsel advised defendant's counsel that plaintiffs had been unable to obtain a Club letter from one of plaintiffs' P & I Clubs and were unwilling to agree to the terms requested by another of plaintiffs' P & I Clubs.

16.     Plaintiffs' counsel also advised on July 20, 2007 that plaintiffs have now revived their Application for a Temporary Restraining Order, and that a conference has been scheduled with this Court on July 24, 2007 at 11:00 am so that plaintiffs can seek their Temporary Restraining Order and schedule a hearing on their Motion for a Preliminary Injunction.

17.     Plaintiffs' counsel confirmed this message in an e-mail dated July 21, 2007 (Exhibit H).

18. It is beyond controversy that defendant will continue to incur losses each time it has to provide labor and services to plaintiffs' vessels and that Rule 65 of the F.R.C.P. requires plaintiffs to provide security before the Court issues a Temporary Restraining Order on plaintiffs' Application. As the matter will likely go to arbitration, the relief requested by defendant at this time is straightforward: plaintiffs should be required to post security in satisfactory form to the extent that a temporary restraining order is granted.

19. Defendant has provided plaintiffs with evidence that security in the amount of at least $1 million is appropriate in order to cover defendant's claims for increased costs due to plaintiff's breach of the Agreement.

20. As plaintiffs' counsel have represented to defendant's counsel that on July 24, 2007 it will seek only to obtain a Temporary Restraining Order and to schedule a hearing on its motion for preliminary injunction, defendant is not submitting its full opposition to a preliminary injunction at this time. However, in no manner does defendant concede that plaintiffs have met the requirements for a preliminary injunction, and defendant reserves the right to submit its arguments and evidence why a preliminary injunction should not issue prior to the date of the scheduled preliminary injunction hearing.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York, on July 21, 2007.

_____
Mark M. Jaffe