John R. Keough, III (JK 6013)
John R. Foster (JF 3635)
Cody D. Constable (CC 6659)
**WAESCHE, SHEINBAUM & O'REGAN, P.C.**
Attorneys for Plaintiffs
SOUTH PACIFIC SHIPPING CO. LTD.,
and PACIFIC FRUIT INC.
111 Broadway, 4th Floor
New York, New York 10006
(212) 227-3550


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X       **ECF CASE**
SOUTH PACIFIC SHIPPING CO. LTD. (d/b/a Ecuadorian
Line) and PACIFIC FRUIT INC.,
                                                                                07 Civ. 6317 (GEL)(KNF)
                                       Plaintiffs,

            -against-

NEW YORK CONTAINER TERMINAL, INC.,

                                       Defendant.
------------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>**

**Preliminary Statement**

In this admiralty action, plaintiffs, South Pacific Shipping Co. Ltd. (d/b/a Ecuadorian Line) ("South Pacific") and Pacific Fruit Inc. ("Pacific Fruit"), respectfully submit this Memorandum of Law in support of their application by order to show cause, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a temporary restraining order and a preliminary injunction enjoining defendant, New York Container Terminal, Inc. ("NYCT"), from failing to perform its duties in accordance with the Terminal Operating, Stevedoring and CFS ["Container Freight Station"] Service Agreement (the "Stevedoring Contract"), dated April 29, 1997, as amended by the Confidential Rate Schedule for Ecuadorian Line, dated October 1, 2005 and signed in December 2006.[1]

Plaintiffs seek this injunctive relief on an urgent basis to allow the discharge and handling of more than 200,000 boxes of bananas and other perishable cargoes on board the M/V DUNCAN ISLAND, a ship due to arrive in the early morning (about 0500) of this Thursday, July 12th, at NYCT's terminal at Staten Island, New York. The DUNCAN ISLAND is scheduled to deliver her cargo of more than 200,000 boxes of bananas and other perishable cargoes to Pacific Fruit and others. This urgent request is necessary to prevent the perishable cargoes from spoiling and becoming unmarketable and to prevent irreparable harm to plaintiffs' business because NYCT refuses to honor its contract to provide a berth and unload the vessel. Upon information and belief, the labor to work the ship must be ordered by NYCT by about 1:00 PM on Wednesday, July 11, to work the ship on July 12.

---

[1] This Court has admiralty and maritime jurisdiction over this case. "A stevedoring contract is maritime." *American Stevedores v. Porello*, 330 U.S. 446, 456 (1947); *Moore-McCormack Lines, Inc. v. International Terminal Operating Co., Inc.*, 619 F.Supp. 1406 (S.D.N.Y. 1985), *appeal granted on other grounds*, 784 F.2d 1452 (2d Cir. 1986); *Orient Mid-East Lines, Inc. v. Albert E. Bowen, Inc.*, 255 F.Supp. 627 (S.D.N.Y. 1966) (inducing breach of a maritime contract is a maritime tort); *Upper Lakes Shipping Ltd. v. Int'l Longshoremen's Ass'n*, 33 F.R.D. 348 (S.D.N.Y. 1963) (tortious interference with shipping business suffices for admiralty jurisdiction).

Plaintiffs request that the injunctive relief remain in effect pending a ruling on plaintiffs' claims that NYCT is liable for breach of maritime contract, tortious interference with maritime contracts and prospective business relations, and unjust enrichment.[2]

### Facts

The relevant facts are set forth in detail in the accompanying Aguirre and Horvath Declarations dated July 10, 2007, and may be briefly summarized as follows:

In December 2006, NYCT agreed to renew the Stevedoring Contract with South Pacific under which the parties had operated since 1997. South Pacific's ocean vessels call each week at the terminal, delivering cargoes of fresh bananas and other perishable fruit carried from Ecuador. Pacific Fruit owns the banana and other fruit cargoes. Under the Stevedoring Contract, NYCT guarantees to provide South Pacific's vessels a berth at NYCT's terminal at Staten Island, New York, on each Wednesday, Thursday and Friday. (These are the days required for discharge of Pacific Fruit's fruit cargo based on the schedule for harvesting and loading the bananas and other fruit in Ecuador and the duration of the voyage to New York). The agreement states specific rates that South Pacific agrees to pay for the stevedoring and terminal services provided by NYCT.

Despite its contractual guarantee and agreed rates, NYCT has informed plaintiffs that NYCT will no longer honor the guarantee of berthing days and now demands an additional payment of $80,000 per month. Specifically, NYCT has notified plaintiffs that (1) NYCT refuses to allow any South Pacific vessel to berth at NYCT's terminal beginning this Thursday, July 12, 2007, unless the demanded additional payments are made ($160,000 for two months), and (2) NYCT will allow South Pacific's vessels to berth only on Tuesdays and Wednesdays,

---

[2] The relevant facts are set forth in the accompanying Declarations of Carlos A. Aguirre ("Aguirre Decl.") and Kevin Horvath ("Horvath Decl."), both dated July 10, 2007.

and refuses to allow any South Pacific vessel to berth on the guaranteed days of Thursday and Friday beginning August 1.

As of this Wednesday, July 11th, South Pacific will have two (2) ships on the water sailing to NYCT's terminal in the port of New York carrying fresh bananas and other perishable cargo for the New York market. Pacific Fruit owns the cargo. NYCT operates the only marine terminal in the New York area at which plaintiffs can deliver and import Pacific Fruit's fresh bananas and other perishable cargoes (the "Perishable Cargoes"). The cargo is intended for sale to Pacific Fruit's customers in the New York area. In accordance with U.S. import regulations, Pacific Fruit declared the cargo for security clearance at NYCT's terminal 24 hours prior to loading in Ecuador as required by the U.S. Department of Homeland Security.

The schedule is as follows: The M/V DUNCAN ISLAND has on board approximately 206,378 boxes of bananas and other perishable cargoes for discharge at New York. The vessel sailed from Ecuador on July 5 and is due to arrive on the scheduled call at approximately 0500 this Thursday, July 12. The M/V ATLANTIC OCEAN is loading in Ecuador this week, is due to sail on July 11 for New York carrying on board about 200,000 boxes of bananas and other perishable cargoes for discharge at New York, where the vessel is due to arrive on the regular scheduled call next Thursday, July 18. The M/V ARCTIC OCEAN is scheduled to load similar cargo in about the same quantity and to sail from Ecuador on Thursday, July 19, and arrive at New York on Thursday, July 26. The M/V HOOD ISLAND is scheduled to load a similar quantity of such cargo, to sail from Ecuador on Friday, July 27 and to arrive at New York on Friday, August 3.

Plaintiffs' complaint alleges that NYCT's refusal to honor its contractual duties will wrongly prevent the delivery of Pacific Fruit's bananas and other perishable cargoes from

the vessels. Plaintiffs contend such conduct by NYCT (1) constitutes a breach of its duties to South Pacific under the Stevedoring Contract, and (2) tortiously interferes with contracts of carriage between South Pacific and Pacific Fruit and with Pacific Fruit's contracts of sale for the fruit and prospective business relations with its customers. Plaintiffs further allege that NYCT has been unjustly enriched by its demand of a prior payment of $240,000, which South Pacific paid under protest in late May 2007.

Despite such payment of $240,000 by plaintiffs to NYCT and plaintiffs' efforts to resolve the dispute short of litigation, NYCT refuses to perform its contractual obligations and thus threatens to destroy Pacific Fruit's business, to prevent South Pacific from delivering the perishable cargo of bananas and other fruit as contractually required, to deprive New York area consumers of bananas, and to reduce work for dock and shoreside workers who participate in the discharge, handling, import, trucking and sale of Pacific Fruit's cargoes.

As discussed more fully below, NYCT's unauthorized and extortionate demands threaten imminent and substantial harm to plaintiffs.

**<u>Argument</u>**

**PLAINTIFFS MEET THE STANDARD FOR A<br>
<u>PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER</u>.**

The evidence set forth in the accompanying Aguirre and Horvath Declarations establishes that NYCT conduct constitutes a breach of its duties in contract and tort and warrants the requested injunctive relief to prevent irreparable harm and to maintain the status quo.

"Generally, '[p]reliminary injunctive relief is appropriate when a plaintiff establishes (1) the likelihood of irreparable injury in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in

5

[plaintiff's] favor.' " *Freedom Holdings, Inc. v. Spitzer*, 447 F.Supp.2d 230, 247-48 (S.D.N.Y. 2004) (Hellerstein, J.) (quoting *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 108 (2d Cir. 2003)); *see also Aim International Trading LLC*, 188 F.Supp.2d 384, 386 (S.D.N.Y. 2002).

**A. <u>Absent Preliminary Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm.</u>**

NYCT's refusal to discharge Pacific Fruit's Perishable Cargoes from South Pacific's vessels will prevent delivery of the fruit to Pacific Fruit's New York market customers, will cause loss of the fruit and loss of Pacific Fruit's customers, market share and goodwill established in its business, and will leave South Pacific in breach of its contracts of carriage with no place to discharge the ripening fruit cargo on board. Such losses cannot be adequately compensated by money damages and constitute irreparable harm.

"It is well-established that a movant's loss of current or future market share may constitute irreparable harm." *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007) (citing *Freedom Holdings v. Spitzer*, 408 F.3d 112, 114-15 (2d Cir. 2005)). An injury is irreparable if the extent of the harm cannot be readily measured or quantified. *See Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704 (2d Cir. 1982). If NYCT stops performing under the Stevedoring Contract, South Pacific's vessels will be unable to dock and discharge Pacific Fruit's Perishable Cargoes at NYCT's terminal, Pacific Fruit will not meet its obligations to supply fruit to its customers in the New York area, and will suffer business losses, loss of goodwill, and loss of market share. The extent of that harm cannot be readily measured or quantified. Without any bananas to sell, Pacific Fruit's market share in the New York area and Northeast would drop to zero.

Pacific Fruit will also suffer irreparable harm because money damages will not make Pacific Fruit whole. *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999). Pacific Fruit will lose business goodwill and the ability to compete, which can constitute irreparable harm. *National Kitchen Products, Inc. v. Kelmort Trading Co.*, 1992 WL 18805 (S.D.N.Y. 1995). Likewise, South Pacific will be left with perishable cargoes on board which will remain undelivered, in breach of the contracts of carriage, and if unloaded will ripen and rot on board, leaving South Pacific with no place to discharge the goods cleared by U.S. authorities for delivery at New York.

The evidence shows that NYCT's failure to perform its duties under the Stevedoring Contract would cut off Pacific Fruit's supply of fruit to the New York area, harm Pacific Fruit's ongoing business relationships with its buyers and result in loss of good will and loss of market share. The resulting damages cannot be readily determined, and NYCT's refusal to perform has created a likelihood of irreparable harm to plaintiffs.

**B. <u>Plaintiffs Show a Likelihood of Success on the Merits.</u>**

    1.    <u>NYCT's Breach of the Stevedoring Contract</u>

The plain language of the contract sets forth the express guarantee by NYCT of a berth and related stevedoring services for South Pacific's vessels each Wednesday, Thursday and Friday. NYCT breaches that guarantee by its refusal to provide a berth on such days and its unilateral demand that South Pacific's vessels berth only on Tuesdays and Wednesdays. The contract contains no provision authorizing NYCT's additional "handling charge" of $80,000 per month. The agreed rates are expressly set forth and contain no such charge. Therefore, NYCT's unilateral demand for such payment as a precondition to performance of its contractual duties is unauthorized and constitutes a breach of the contract.

Further, under New York law, the third-party beneficiary of a contract may enforce the contract where the terms of a contract necessarily require conferring a benefit to a third party. New York law applies here as set forth in Section XIII of the Stevedoring Contract. A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties to compensate him if the benefit is lost." *Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (applying New York law). Here, the evidence demonstrates that the contract is valid and binding; was intended for Pacific Fruit's benefit; and its benefit to Pacific Fruit is "sufficiently immediate."

    2.    NYCT's Refusal to Discharge the Perishable Cargoes
          Prevents Plaintiffs from Performing Their Contracts

Courts have consistently recognized that interference with contracts preventing discharge of perishable cargoes constitutes a tort. *See Fruit Dispatch Co. v. National Maritime Union of America*, 1962 AMC 250, 1960 WL 98999 (La. Dist. Ct. October 20, 1960) (not officially reported) (granting preliminary injunction prohibiting defendants from interfering with the discharge of bananas); *Orient Mid-East Lines v. Albert E. Bowen, Inc.*, 255 F.Supp. 627 (S.D.N.Y. 1966); *Upper Lakes Shipping Ltd. v. Int'l Longshoremen's Ass'n*, 33 F.R.D. 348 (S.D.N.Y. 1963); *Pan-American Fruit Co. v. Astralaga*, 1972 A.M.C. 2416 (No. 111A/58/A51608, Maryland Cir. Ct. of Baltimore City, February 8, 1971) (not officially reported) (finding that irreparable injury would occur if cargo spoiled, and issuing a temporary restraining order prohibiting crewmen from preventing unloading of perishable cargo). The reasoning in these cases applies here with equal force.

## C. Plaintiffs Have Fair Grounds for Litigation and The Balance of Hardships Tips Decidedly in Pacific Fruit's Favor.

As set forth above, the courts in New York and elsewhere have consistently granted injunctive relief on analogous facts.

Further, plaintiffs here demonstrate that the balance of hardships tips decidedly in their favor by establishing that, absent the injunction, it is likely that they will lose customers and goodwill or be placed at a competitive disadvantage; and NYCT cannot show that it will suffer significant injury if the injunction is granted. *See Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438 (2d Cir. 1977).

The hardship, if any, that might result to NYCT is "insignificant in comparison" to the loss of business, goodwill and market share that Pacific Fruit faces absent a preliminary injunction. *See Reuters*, 903 F.2d at 909. The balance of hardships, therefore, tips decidedly in plaintiffs' favor.

## D. The Public Interest Favors Issuance of the Injunction.

In determining whether a threat of irreparable harm exists, the court may consider harm to the public. *Long Island R.R. Co. v. Int'l Ass'n of Machinists*, 874 F.2d 901 (2d Cir. 1989). As set forth in the Aguirre Declaration, NYCT's refusal to discharge will deprive New York area consumers of bananas, will reduce work for dock and shoreside workers, and threatens the livelihood of plaintiffs' employees, their customers' employees, truckers who deliver Pacific Fruit's perishable cargoes, and the wholesale and retail industry ripeners and distributors who ripen and distribute Pacific Fruit's cargoes. (¶ 37)

E. **The Arbitration Clause in the Stevedoring Contract Does Not Preclude Injunctive Relief.**

This Court has the discretion to issue injunctive relief pending any arbitration between South Pacific and NYCT. As Judge Weinfeld observed in *Albatross S.S. Co. v. Manning Bros., Inc.*, 95 F.Supp. 459 (S.D.N.Y. 1951):

> The Courts are not limited in their equity powers to the specific function of enforcing arbitration agreements but may exercise those powers required to preserve the status quo of the subject matter in controversy pending the enforcement of the arbitration provision.

95 F.Supp. at 463 (seizing of petitioner's vessel constituted "an interference with the contract between the charterer and the owner of the cargo." 95 F.Supp. at 464).

F. **The Perishable Nature of the Cargoes Warrants Specific Performance.**

Courts have ordered performance of sales contracts where the goods are perishable. *See Campbell Soup Co. v. Biehm*, 111 F.Supp. 211 (E. D. Pa. 1952); *Green Stripe, Inc. v. Berny's Internacionale, S.A.,* 159 F.Supp.2d 51 (E.D. Pa. 2001) The Perishable Cargoes are a "unique, perishable product" for which Pacific Fruit "cannot obtain a substitute on the market." *Green Stripe*, 159 F.Supp.2d at 57 (ordering delivery of perishable fruit).

## CONCLUSION

For these reasons, plaintiffs respectfully request that the Court grant the relief requested in the attached Order temporarily restraining and preliminarily enjoining New York Container Terminal from stopping, interfering with or delaying the unloading, proper storage and delivery of the Perishable Cargoes during the pendency of this action.

Dated: New York, New York
      July 10, 2007

                                        Respectfully submitted,

                                        **WAESCHE, SHEINBAUM & O'REGAN, P.C.**
                                        Attorneys for Plaintiffs
                                        South Pacific Shipping Co. Ltd., and
                                        Pacific Fruit Inc.

                                        By: _____/s/_____
                                             John R. Keough, III (JK 6013)
                                             John R. Foster (JF 3635)
                                             Cody D. Constable (CC 6659)
                                             111 Broadway, 4th Floor
                                             New York, New York 10006
                                             (212) 227-3550