# EXHIBIT 5

**ECUADORIAN LINE**

May 22, 2007

New York Container Terminal
300 Western Avenue
Staten Island, NY 10303

Attn: Mr. James Devine

Dear Jim:

I apologize for the delay in responding to your letter of March 30th of 2007.

~~We have carefully reviewed the content of your letter and your "Analysis of Change of Business Costs".~~

While we did substitute the "Ocean Class" vessels instead of the "Island Class" your rates quoted in the Confidential Stevedoring Rate Schedule "are predicated on a pallet friendly vessel which allows for the use of four electric fork-lifts trucks in the hatch and ship's cranes or derricks with minimum eight metric ton lifting capacity. At least one-half of each square to be preslung". Since we relocated to this terminal in July of 1997, both class vessels have met and worked under the provision quoted above.

I would now like to briefly address the points which you have raised.

Item A.
While we recognize that this is true we must also mention that during the years 2000 through 2006 when you were discharging the "Island Class" vessels we did not request or receive any credits for the reduction of your equipment usage. In any case, you are compensated for this by the volume increase times the rate.

Item B.
There has been no substantial increase in drop trailers. If anything, our land usage has decreased due to the fact that our container imports are 40% less than when we employed the "Island Class" vessels. If there was any additional waste containers utilized, this was an isolated occurrence due to extreme weather conditions, and you are nonetheless compensated under the terms of the contract.

Item C.
We do not believe that this is a valid issue.

Item D.
It is correct that your labor for the warehouse operations has increased, but so has your revenue more than doubled by virtue of handling our increased breakbulk palletized volume. In addition your revenue has increased from the handling of more stuffers and from stripping operations.

Item E
Please see our answer for item B.

ECUADORIAN LINE, INC.
300 WESTERN AVENUE
STATEN ISLAND, NEW YORK 10303

TELEPHONE: (718) 556-846
FAX: (718) 556-845

Item F.
We have performed a comparative review of the average productivity of the "Island Class" vs. the "Ocean Class" vessels discharging at New York Container Terminal. Our 1999 statistics for the last year that the "Ocean Class" previously discharged here show that the average productivity which you achieved was 75 pallets net per hour. Our review of the "Island Class" discharge in 2006, the last year that this vessel class discharged here shows an average discharge rate of 90 pallets net per hour. Your current productivity for the "Ocean Class" now is only an average of 68 pallets net per hour.

Based on our comparative analysis of the discharge operations pertaining to both vessel classes, we conclude that there is currently a reduction in net productivity of approximately 10% or 7 pallets net per hour when comparing the "Ocean Class" productivity in 2007 vs. 1999 and a net reduction in productivity of approximately 24% or 22 pallets net per hour when we compare the discharge of the "Island Class" in 2006 vs. the "Ocean Class" in 2007. It is obvious that presently you are not achieving the productivity levels in the Oceans which you have been able to achieve in the past on the Islands. However, it is also obvious that you are not currently achieving the same levels of productivity on the Oceans that you have previously reached. If you achieve the past productivity levels of the Oceans, your net productivity reduction would only be 15 pallets net per hour.

Item G.
Please see our answer for item B.

Item H.
This in our opinion is a non-issue as you are compensated for this service as per the terms of the contract.

Item I.
Please see our answer for item H.

We recognize that there has been a change in your operations due to our change in vessel class being discharged. We also recognize that there has been an impact in your productivity levels due to this change, however, we are not in agreement on all the points raised in your letter.

We agree that the points you raise warrant further discussion.

Please let us know a suitable time to meet with you.

Very truly yours,

ECUADORIAN LINE, INC.

Carlos A. Aguirre
President

CAA/cc

Case 2:07-cv-06317-GEL   Document 7-4   Filed 07/23/2007   Page 4 of 7

# EXHIBIT 6

```
----- Original Message -----
From: "Jim Devine" [jdevine@nycterminal.com]
Sent: 06/08/2007 05:04 PM
To: Carlos Aguirre
Cc: Kevin Horvath
Subject: Stevedoring Services
```

Carlos,

Following up on my recent conversation and our meeting yesterday morning, please be advised of the following:

- NYCT is proceeding with the understanding that we do not have a current contract to service the Ocean Class Vessels that you have presented to us. Ecuadorian's decision to bring these vessels to the terminal without our permission has resulted in a material change to this terminal and as such your actions abrogated the contract which was established less than two years ago.

- In that this vessel is effectively a break bulk operation, we do not have the manpower to work it during the same time slot that you worked with the Island Class Vessels. The only timeslot that is available at this terminal to work these break bulk vessels is on a Tuesday/Wednesday proforma. If Ecuadorian can make the necessary arrangements to present these vessels to us on Tuesday/Wednesday we would be very pleased to work them at that time and will establish a contract to reflect the new operation.

- In the event that we do establish a Tuesday/Wednesday proforma for your vessel, the terminal will make its best effort to work the vessel that is off proforma consistent with the terminal's other work requirements.

- Once again, if Ecuadorian can bring the vessel in on Tuesday/Wednesday, the terminal agrees to work these vessels on this newly established proforma for a period of four months under the rates in the old abrogated contract. We will do this out of good faith in order to understand what the impact is in terms of manning, equipment requirements, productivity and efficiency variables. Once we have this experience we will come up with a new proposed rate and sit and negotiate a contract going forward. We will not seek to retroactively bill during the time we evaluated the new proforma.

Carlos, as I indicated yesterday, it is indeed unfortunate that after a long, mutually beneficial relationship, we have found ourselves in the present situation. We do understand that Ecuadorian had to take certain actions to protect your company faced with the changed environment you found in North Europe. I am sure you did not envision that these actions which you unilaterally took would have such a negative impact on our Company, but as I stated, they have had an extremely detrimental impact on us and now we must react to protect our Company's best interest. Having said this, I hope you are able to adjust your proforma and continue to be our customer. If however this is not possible, we will do everything possible to assist you as you seek other arrangements.

# EXHIBIT 7

-----Original Message-----
From: khorvath@bonita.com [mailto:khorvath@bonita.com]
Sent: Monday, June 25, 2007 11:22 AM
To: Jim Devine
Cc: CAguirre@Bonita.com
Subject: NYCT

Dear Jim,

We reply to your email sent to Carlos Aguirre on Friday, June 8, at 504 pm.
Your refusal to honor our contract is unacceptable and your proposal that
we release NYCT from its existing contractual obligations is rejected.

Your message makes a number of incorrect assertions. We address some of them below to set the record straight.

First, we cannot imagine where you get the idea that you do not have a contract for the Ocean class vessels, or for any other vessels we operate.
As you know, and as we have reminded you several times recently, the contract expressly obligates you to work these vessels. We operated these
same Ocean class vessels at your terminal at the outset of the contract.

Second, you also incorrectly contend that we abrogated the contract. You
are wrong in stating that we did not obtain your permission to bring them
to the terminal. You gave permission by agreeing to the contract, most recently in December 2006.

Nor are the Ocean class vessels effectively a breakbulk operation as you allege.

You contractually guaranteed us a berth and terminal. services for Wednesday, Thursday and Friday of each week. Now you tell us you will disregard that guarantee. We do not agree to change the contractual dates.
We must hold you to your word and insist that you perform your obligations
in accordance with our valid and binding contract.

Kevin Horvath
Ecuadorian Line