John R. Keough, III (JK 6013)
John R. Foster (JF 3635)
Cody D. Constable (CC 6659)
**WAESCHE, SHEINBAUM & O'REGAN, P.C.**
Attorneys for Plaintiffs
SOUTH PACIFIC SHIPPING CO. LTD.,
and PACIFIC FRUIT INC.
111 Broadway, 4th Floor
New York, New York 10006
(212) 227-3550

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SOUTH PACIFIC SHIPPING CO. LTD. (d/b/a
Ecuadorian Line) and PACIFIC FRUIT INC.,

                                        Plaintiffs,

                    -against-

NEW YORK CONTAINER TERMINAL, INC.,

                                        Defendant.

-------------------------------------------------------------------X

**ECF CASE**

07 Civ. 6317 (GEL)(KNF)

**DECLARATION OF
JOHN R. FOSTER**

JOHN R. FOSTER declares as follows:

1.      I am an officer of Waesche, Sheinbaum & O'Regan, P.C., attorneys for the

plaintiffs, Pacific Fruit Inc. ("Pacific Fruit") and South Pacific Shipping Co. Ltd. ("South

Pacific"), and a member of the Bar of this Court.   I make this Declaration based on my personal

knowledge, as well as from documents in my file.

2.      I respectfully submit this Declaration in further support of Plaintiffs'

application on an urgent basis for a temporary restraining order and preliminary injunction

enjoining the defendant, New York Container Terminal, Inc. ("NYCT"), from failing to perform

its duties in accordance with the Terminal Operating, Stevedoring and CFS ["Container Freight

Station'] Service Agreement (the "Stevedoring Contract"), dated April 29, 1997, as amended by the Confidential Rate Schedule for Ecuadorian Line, dated October 1, 2005, and signed in December 2006.

3.    Plaintiffs originally submitted their application for this injunctive relief to the Part I judge (the Honorable Sidney H. Stein) on Wednesday, July 11, in order to compel the discharge and handling of more than 200,000 boxes of bananas and other perishable cargoes on board the M/V DUNCAN ISLAND.  That ship was arriving the next morning, Thursday, July 12, at NYCT's terminal on Staten Island to deliver her cargo to Pacific Fruit and others.  After notice of the application was served on NYCT's lawyers, the parties reached an agreement to allow the DUNCAN ISLAND (as well as last week's M/V ATLANTIC OCEAN) to discharge without the need for court intervention.

4.    However, the parties have been unable to reach further agreement for those ships arriving in the regular weekly service for the coming weeks, with the next scheduled vessel (the M/V ARCTIC OCEAN) due this Thursday, July 26.  True copies of the relevant email exchanges between counsel are attached as Exhibits 1 – 8.

5.    Thus, for essentially the same reasons previously stated on July 11, the renewal of this urgent request is necessary to prevent these perishable cargoes from spoiling and becoming unmarketable, as well as to prevent irreparable harm to plaintiffs' business because of NYCT's refusal to honor its contractual obligations to provide a berth and to unload ships.  Upon information and belief, the labor to work this ship must be ordered by NYCT by about 1:00 PM on Wednesday, July 25, to work the ship the next day.

6.    Moreover, NYCT still refuses to work any of South Pacific's vessels on Wednesdays, Thursdays, and Fridays after August 3 (when the M/V HOOD ISLAND arrives), despite NYCT's promise to do so in its contract with South Pacific.  The motives for NYCT's

refusal are essentially twofold: First, NYCT is disregarding its contractual obligations to South

Pacific in order to favor a new, larger customer: APL Limited.  Second, NYCT's new owner, a

Canadian pension fund, is pressuring NYCT's management to improve the Terminal's bottom

line.  (See the last paragraph of the July 20 Jaffe letter, Exhibit 7.)  NYCT's "drop dead" date is

quickly approaching: A loaded vessel will sail from Ecuador about next Wednesday, August 1,

for arrival at NYCT's terminal the following week, on about Wednesday, August 8.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 23, 2007.

**JOHN R. FOSTER**

# EXHIBIT 1

**Subject:** South Pacific Shipping v NY Container Terminal
**From:** "John R. Foster" <j.foster@waeschelaw.com>
**Date:** Wed, 11 Jul 2007 13:27:17 -0400
**To:** mjaffe@hillbetts.com
**BCC:** "John R. Keough III Esq." <j.keough@waeschelaw.com>, "Ms. Shaleem Grant" <s.grant@waeschelaw.com>, "John R. Foster Esq." <johnfoster42@gmail.com>, "Cody D. Constable Esq." <c.constable@waeschelaw.com>

Mark:

Confirming our telephone conversation of a few minutes ago, my understanding is:

1. NY Container Terminal will work the ship coming in tomorrow.

2. NY Container Terminal contends that it has a claim for ~$2 million against South Pacific Shipping for stevedoring charges. NYCT contends that it has the right to arrest South Pacific vessels as security for its claim.

3. South Pacific will use its best efforts to obtain a Club letter for $1 million as security for NYCT's claimed stevedoring charges for the period from inception through 90 days after the date of the Club letter.

4. In order to present NYCT's demand for security to the Club, South Pacific needs from you a letter demanding security and providing a calculation of the claimed amount. As mentioned, the $2 million figure is news to Pacific Fruit.

5. In return for the Club letter, NYCT will refrain from seizing South Pacific assets in accordance with standard Club wording.

5. Also in return for the Club letter, NYCT will continue normal working of the South Pacific's vessels, with the understanding that the issue of working the vessels on a restricted-service basis subsequent to 9/1/07 will be addressed by the parties later.

Please let me know if I have made any mistakes in what was discussed.

Based on my understanding that tomorrow's vessel will be worked, I have advised Judge Stein's Chambers that a) tomorrow's problem has been resolved by the parties, b) the need for a TRO is therefore presently moot, and c) if there are any further problems, such as next week, we will raise them then with Judge Lynch.


Regards,

John R. Foster

Waesche, Sheinbaum & O'Regan, P.C.
111 Broadway
New York, NY 10006
Voice: (212) 227-3550
Fax: (212) 267-5767
email: j.foster@waeschelaw.com

# EXHIBIT 2

# HILL, BETTS & NASH LLP

ONE WORLD FINANCIAL CENTER
200 LIBERTY STREET, 26TH FLOOR
NEW YORK, NY 10281

(212) 839-7000
FAX: (212) 466-0514
WRITER'S DIRECT PHONE:

## (212) 589-7524

July 11, 2007

VIA EMAIL AND MAIL

John R. Foster, Esq.
Waesche, Sheinbaum & O'Regan, P.C.
111 Broadway, 4th Floor
New York, N.Y. 10006-1991

        Re:      South Pacific Shipping Co. Ltd. (D/B/A
                     Ecuadorian Line) and Pacific Fruit Inc. v.
                     New York Container Terminal
                     USDC - SDNY
                     07 CV 6319 Judge Lynch
                     <u>Our File No.  5027-9</u>

Dear John:

      On behalf of defendant we have accepted service at noon today of the Summons and Complaint and the form of Order To Show Cause and moving papers in the above action and confirm our discussions as follows:

      1.      Without prejudice to its claims for compensatory damages, defendant will work the following vessels:

              M/V DUNCAN ISLAND     Due July 12, 2007
              M/V ATLANTIC OCEAN   Due July 18, 2007
              M/V ARCTIC OCEAN     Due July 26, 2007
              M/V HOOD ISLAND       Due August 3, 2007

      2.      In return and to refrain from arresting such vessels, their cargo and freights defendant expects to receive a Club Letter or comparable security in the amount of $1 Million to secure defendant's claims through the call on August 3rd of the HOOD ISLAND and for further vessel calls through the months of August and September, 2007.

      3.      As previously notified to your clients, defendant is presently assessing the cost of the service changes made unilaterally by your clients as and from January, 2007.  However,

{NY060928.1 }

FLORIDA

601 BRICKELL KEY DRIVE, SUITE 500
MIAMI, FL 33131
(786) 425-9900 • FAX: (786) 425-9090

John R. Foster, Esq.
July 11, 2007
Page 2 of 2

attached preliminarily is a schedule showing the productivity losses sustained by defendant through May, 2007 by reason of these service changes made by your clients. It is our understanding that such losses are continuing at the rate of at least $80,000 per month.

4.    Hopefully, between now and the end of September our clients will be able to resolve their disputes either commercially or by arbitration. Also to be resolved is the question of the days on which vessel calls occur and time now being required for discharge.

5.    We have filed a Notice of Appearance on behalf of defendant and look forward to your confirmation by tomorrow that the Club Letter will be forthcoming.

Sincerely,

Mark M. Jaffe

MMJ:ak
Enclosure

Cc:    New York Container Terminal, Inc.
       Attn:  Messrs.  James Devine
                       John Atkins
                       Frank Scollo

{NY060928.1 }

**New York Container Terminal, Inc.**
**Analysis of Ecuadorian Line Productivity - Pallets**
**Monthly Comparison 2006 + 2007**

| Month | Year 2006 Pallets | 2006 Productivity Gross | 2006 Productivity Net | Year 2007 Pallets | Hrs @ 2006 | 2007 Productivity Gross | 2007 Productivity Net | Hrs @ 2007 | Add'l Hrs. Needed | Difference Net | Difference Productivity | Rate | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| January 2007 Volume @ 2006 Productivity | 5,618 | 80.88 | 95.81 | 13,939 | 145.49 | 57.44 | 74.76 | 186.45 | 40.96 | 21.05 | 22% | $ 1,666.25 | $ 68,256.46 |
| February 2007 Volume @ 2006 Productivity | 3,882 | 79.96 | 93.14 | 15,737 | 168.96 | 49.01 | 60.33 | 260.85 | 91.89 | 32.81 | 35% | $ 1,666.25 | $ 153,108.32 |
| March 2007 Volume @ 2006 Productivity | 8,643 | 77.28 | 100.88 | 19,946 | 197.72 | 50.00 | 63.35 | 314.85 | 117.13 | 37.53 | 37% | $ 1,666.25 | $ 195,174.40 |
| April 2007 Volume @ 2006 Productivity | 7,328 | 90.73 | 113.11 | 16,031 | 141.73 | 56.60 | 70.50 | 227.39 | 85.66 | 42.61 | 38% | $ 1,666.25 | $ 142,732.28 |
| May 2007 Volume @ 2006 Productivity | 10,481 | 76.04 | 97.64 | 19,163 | 196.26 | 54.60 | 67.93 | 282.10 | 85.84 | 29.71 | 30% | $ 1,666.25 | $ 143,026.64 |
| Totals | | | | | | | | | 421.48 | | | $ 1,666.25 | $ 702,298.09 |

# EXHIBIT 3

**Subject:** RE: South Pacific Shipping v NY Container Terminal
**From:** "Mark M. Jaffe" <mjaffe@hillbetts.com>
**Date:** Wed, 11 Jul 2007 23:22:48 -0400
**To:** "John R. Foster" <j.foster@waeschelaw.com>

*WITHOUT PREJUDICE*

John:

On a going forward basis and for the sake of good order we deal with the $2 million damage estimate that we provided to you this morning. As your client is aware, NYCTI has been studying the extent of loss of productivity and extra costs arising from the service change since the beginning of the year. One aspect of that study dealing with the loss of productivity has been furnished to you earlier today. However, your client needs to be aware what other aspects of the operation are also being evaluated related to equipment, etc. In some cases, it appears that there have been savings, but for other aspects, there are certainly extra costs. The results of those studies are not yet available. All in all, however, it is clear that the extra costs on the stevedoring side are going to well exceed $1 million by September, but we have urged $1 million as a provisional figure.

In addition, the change in working days and the extension of the time of each vessel has to be worked will begin driving other damages in terms of the Terminal's operations, particularly at a time when the Terminal will be receiving additional vessel calls from other customers. Those aspects are also being studied, but there are no results available so far--but clearly the claim will likely be headed over the $2 million estimate provided this morning.

Regards.

```
-----Original Message-----
From: John R. Foster [mailto:j.foster@waeschelaw.com]
Sent: Wednesday, July 11, 2007 1:27 PM
To: Mark M. Jaffe
Subject: South Pacific Shipping v NY Container Terminal

Mark:

Confirming our telephone conversation of a few minutes ago, my
understanding is:

1. NY Container Terminal will work the ship coming in tomorrow.

2. NY Container Terminal contends that it has a claim for ~$2 million
against South Pacific Shipping for stevedoring charges. NYCT contends
that it has the right to arrest South Pacific vessels as security for
its claim.

3. South Pacific will use its best efforts to obtain a Club letter for
$1 million as security for NYCT's claimed stevedoring charges for the
period from inception through 90 days after the date of the Club letter.

4. In order to present NYCT's demand for security to the Club, South
Pacific needs from you a letter demanding security and providing a
calculation of the claimed amount. As mentioned, the $2 million figure
is news to Pacific Fruit.

5. In return for the Club letter, NYCT will refrain from seizing South
```

Pacific assets in accordance with standard Club wording.

5. Also in return for the Club letter, NYCT will continue normal working of the South Pacific's vessels, with the understanding that the issue of working the vessels on a restricted-service basis subsequent to 9/1/07 will be addressed by the parties later.

Please let me know if I have made any mistakes in what was discussed.

Based on my understanding that tomorrow's vessel will be worked, I have advised Judge Stein's Chambers that a) tomorrow's problem has been resolved by the parties, b) the need for a TRO is therefore presently moot, and c) if there are any further problems, such as next week, we will raise them then with Judge Lynch.

Regards,

John R. Foster

Waesche, Sheinbaum & O'Regan, P.C.
111 Broadway
New York, NY 10006
Voice: (212) 227-3550
Fax: (212) 267-5767
email: j.foster@waeschelaw.com

# EXHIBIT 4

**Subject:** South Pacific Shipping v NYCT
**From:** "John R. Foster" <j.foster@waeschelaw.com>
**Date:** Thu, 12 Jul 2007 17:36:32 -0400
**To:** "Mark M. Jaffe" <mjaffe@hillbetts.com>
**CC:** "John R. Keough III Esq." <j.keough@waeschelaw.com>
**BCC:** "Cody D. Constable Esq." <c.constable@waeschelaw.com>, "Ms. Shaleem Grant"
<s.grant@waeschelaw.com>, "John R. Foster Esq." <johnfoster42@gmail.com>

Mark:

1. Thank you for your msgs of yesterday afternoon and evening, the
contents of which are noted. But I believe that my email following our
conversation better reflects what was discussed and particularly the
understanding of South Pacific/Pacific Fruit. Specifically, there was no
discussion about the Terminal arresting cargo, which there is no basis
to do. Also, we did not discuss limiting the Terminal's working of
vessels to specifically named vessels on specific dates.

2. As to the quantum of NYCT's claim, the spreadsheet does not explain how the
"productivity" costs are calculated or what provision of the contract NYCT relies
on as the basis for the claim.  It would be helpful in our discussions on security
if you would please explain these points.  Also, we are confused by the claim
amount of $700,000 for 5 months, as the monthly charge previously claimed had been
$80,000.  Can you explain the difference, please? Also, I note that the schedule
does not credit South Pacific for the $240,000 already paid under protest in May.
Finally, if the Terminal will not allow South Pacific to discharge as scheduled
during August and September, why should South Pacific provide security for those
months?

3. As I mentioned on the telephone a few minutes ago, the Standard Club
is refusing to provide the requested letter. The rationale is that
NYCT's claim is for contractual charges that are not covered by the Club
rules. The matter is still under discussion (at least in our view), and
we are considering alternatives, such as approaching the charterer's P&I. If you
have any suggestions or proposals, please feel free to let us know. I will advise
you once I know more.


Regards,

John R. Foster

Waesche, Sheinbaum & O'Regan, P.C.
111 Broadway
New York, NY 10006
Voice: (212) 227-3550
Fax: (212) 267-5767
email: j.foster@waeschelaw.com

# EXHIBIT 5

**Subject:** South Pacific Shipping v NYCT
**From:** "Mark M. Jaffe" <mjaffe@hillbetts.com>
**Date:** Fri, 13 Jul 2007 20:03:53 -0400
**To:** "John R. Foster" <j.foster@waeschelaw.com>, "John R. Keough III Esq."
<j.keough@waeschelaw.com>

Gentlemen:

We refer to John Foster's email of July 12, 2007 at 5:37 PM and respond as follows:

1. We are not aware of any doubt that if the applicable Stevedoring and Terminal charges are not paid that the Terminal is somehow also prevented from detaining and disposing of the cargo in respect of such charges. Also, we do not understand where you have gone to court on an Order to Show Cause naming specific and regularly scheduled vessels that there is any basis for the Terminal to agree in advance to work other vessels, particularly at a time when your clients are aware that as and from August 4th, the Terminal may be at virtual capacity and cannot handle any other vessel calls.

2. We have advised you that the security will cover a period of three (3) months of vessel operations—July, August, and September—by which time we trust that the dispute between our clients will be resolved. Meanwhile, our client has agreed to accept security of only one million ($1,000,000) dollars when its potential claims are obviously more. We visited the Terminal today to obtain the information you requested regarding computation of damages. All computations are still a work in progress because there are a number of variables necessarily being considered. However, in the interim we can provide you with the following information without prejudice to its subsequent revision:

   a. Loss of productivity by reason of additional hours needed to handle increased quantities of pallets (double or triple the normal volume)—See Schedule A for January through May. This pattern continued in June and is continuing in July roughly at the rate of $140,000 per month, so that by the end of July this item of damage will be approximately $980,000 less the $240,000 already paid.

   b. Additional equipment costs have run at the rate of approximately $84,000 per month. Through May, the additional costs were $420,786 (per Schedule B). By the end of July, this aspect of the claim will have risen to approximately $580,000.

3. In addition to the items shown on Schedules A and B, the Terminal has identified the following additional cost areas per Schedule C:

   a. Increased equipment wear and tear....................................... $75,000/month

   b. Additional land usage............................................................. $16,000/month

   c. Waste removal....................................................... $10,000/month (approx.)

   d. Increase in workmen's compensation premium........................................................................ Not yet quantified

    e. Increased warehouse labor not recovered
       from increased charges.......................................... $60,000/month (approx.)

    f. Increased quantity of swingloads....................................... Not yet quantified

    g. Repacking........................................................................ Not yet quantified

4. The Terminal is presently in the process of studying and refining the numbers, but the estimates we have received clearly support the security which the Terminal has requested, and in our view such cannot be a serious issue, particularly as by August 4th, when the APL service starts, the level and rate of accruing damages will be "a whole new ball game."

5. Your clients are among the largest growers and shippers of fresh fruit in the world. It should not be the Terminal's problem as to how your clients produce the security required. They could do it in cash; by letter of credit; by bond; or by an alternate Club letter if charterer's P&I Club will accommodate its member.

While we are sympathetic with your client's situation regarding the Standard Club's refusal to issue a Club letter, we believe that the Terminal has provided ample time for the giving of security, and if the matter is not resolved by Tuesday, July 17, 2007, we will need to move to establish the security and/or dissolve the Order to Show Cause. Candidly, we do not understand why this action would have been initiated without having made arrangements in advance to post security.

Regards.

MARK M. JAFFE
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, NY 10281
Tel. No.: (212) 839-7000
Fax No.: (212) 466-0514

The information in this Internet e-mail is confidential, may be legally privileged and is intended solely for the addressee. If the reader of this communication is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this communication in error and that any use, review, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete this e-mail and any copy thereof.

| **Schedule C.pdf** | **Content-Description:** Schedule C.pdf |
| --- | --- |
| | **Content-Type:** application/octet-stream |
| | **Content-Encoding:** base64 |

| **Schedule B.pdf** | **Content-Description:** Schedule B.pdf |
| --- | --- |
| | **Content-Type:** application/octet-stream |
| | **Content-Encoding:** base64 |

7/23/2007 11:27 AM

| | |
|---|---|
| **Schedule A.pdf** | **Content-Description:** Schedule A.pdf |
| | **Content-Type:**          application/octet-stream |
| | **Content-Encoding:**   base64 |

**New York Container Terminal, Inc.**
**Analysis of Ecuadorian Line Productivity - Pallets**
**Monthly Comparison 2006 + 2007**

| Month | Year 2006 | | | Year 2007 | | | Add'l Hrs. | Difference | |
| | Pallets | Productivity | | Pallets | Productivity | | Needed | Productivity | |
| | | Gross | Net | | Gross | Net | | Net | Rate |
| January | 5,618 | 80.88 | 95.81 | 13,939 | 57.44 | 74.76 | | 21.05 | $ 1,666.25 |
| 2007 Volume @ 2006 Productivity | | | | 145.49 | | 186.45 | 40.96 | 22% | $ 68,256.46 |
| February | 3,882 | 79.96 | 93.14 | 15,737 | 49.01 | 60.33 | | 32.81 | $ 1,666.25 |
| 2007 Volume @ 2006 Productivity | | | | 168.96 | | 260.85 | 91.89 | 35% | $ 153,108.32 |
| March | 8,643 | 77.28 | 100.88 | 19,946 | 50.00 | 63.35 | | 37.53 | $ 1,666.25 |
| 2007 Volume @ 2006 Productivity | | | | 197.72 | | 314.85 | 117.13 | 37% | $ 195,174.40 |
| April | 7,328 | 90.73 | 113.11 | 16,031 | 56.60 | 70.50 | | 42.61 | $ 1,666.25 |
| 2007 Volume @ 2006 Productivity | | | | 141.73 | | 227.39 | 85.66 | 38% | $ 142,732.28 |
| May | 10,481 | 76.04 | 97.64 | 19,163 | 54.60 | 67.93 | | 29.71 | $ 1,666.25 |
| 2007 Volume @ 2006 Productivity | | | | 196.26 | | 282.10 | 85.84 | 30% | $ 143,026.64 |
| Totals | | | | | | | 421.48 | | $ 702,298.09 |

**New York Container Terminal**
**Analysis of ECL Service - Banana Operation Hours**
**Period January 1, 2006 - May 31, 2006 to January 1, 2007 - May 31, 2007**

| Vsl/Voy | Arrival | Boxes | # Cranes | Gross Hrs. | Net Hrs. |
|---|---|---|---|---|---|
| Isalb 131E | 1/5/2006 | 84,426 | 2 | 22.60 | 19.30 |
| Isbar 128E | 1/12/2006 | 62,705 | 2 | 15.90 | 13.50 |
| Isdun 124E | 1/19/2006 | 63,321 | 2 | 16.70 | 14.30 |
| Ischa 126E | 1/26/2006 | 63,104 | 2 | 18.50 | 15.30 |
| | | | | | |
| Ishod 119E | 2/2/2006 | 63,099 | 2 | 16.90 | 14.30 |
| Isalb 132E | 2/10/2006 | 63,201 | 2 | 15.70 | 13.90 |
| Isbar 129E | 2/16/2006 | 63,920 | 2 | 16.00 | 13.50 |
| | | | | | |
| Isdun 125E | 3/1/2006 | 104,519 | 3 | 27.50 | 22.10 |
| Ischa 127E | 3/3/2006 | 83,583 | 2 | 25.40 | 19.40 |
| Ishod 120E | 3/13/2006 | 63,601 | 2 | 16.00 | 12.60 |
| Isalb 133E | 3/21/2006 | 86,257 | 2 | 25.00 | 18.70 |
| Isbar 130E | 3/23/2006 | 83,355 | 2 | 19.20 | 13.90 |
| | | | | | |
| Isdun 126E | 4/3/2006 | 83,560 | 2 | 17.50 | 14.10 |
| Ischa 128E | 4/7/2006 | 63,693 | 2 | 13.00 | 10.70 |
| Ishod 121E | 4/14/2006 | 63,684 | 2 | 15.60 | 12.60 |
| Isalb 134E | 4/20/2006 | 64,492 | 2 | 15.50 | 11.20 |
| Isbar 131E | 4/30/2006 | 85,954 | 2 | 19.20 | 16.30 |
| Isdun 127 | 5/7/2006 | 106,211 | 3 | 32.00 | 23.10 |
| Ischa 129 | 5/12/2006 | 104,995 | 3 | 28.10 | 21.50 |
| Elati 224 | 5/15/2006 | 43,984 | 2 | 12.00 | 9.90 |
| Ishod 122 | 5/19/2006 | 106,258 | 3 | 26.60 | 23.10 |
| Isalb 135 | 5/26/2006 | 106,471 | 3 | 26.70 | 22.30 |
| Elind 215 | 5/29/2006 | 44,496 | 2 | 19.60 | 11.40 |
| | | | | | |
| | **Totals** | **1,246,474** | | **461.70** | **367.40** |
| | | | | | |
| Ishod 129E | 1/5/2007 | 94,080 | 2 | 26.00 | 20.10 |
| Elati 229E | 1/11/2007 | 192,047 | 4 | 80.80 | 63.10 |
| Elind 220E | 1/20/2007 | 193,366 | 4 | 74.90 | 56.30 |
| Elart 225E | 1/24/2007 | 193,381 | 4 | 76.50 | 58.70 |
| | | | | | |
| Elati 230E | 1/31/2007 | 191,654 | 4 | 78.00 | 61.20 |
| Elind 221E | 2/7/2007 | 191,242 | 4 | 79.60 | 67.50 |
| Elarc 226E | 2/15/2007 | 187,284 | 4 | 86.90 | 70.00 |
| Elati 231E | 2/21/2007 | 194,431 | 4 | 77.50 | 63.10 |
| | | | | | |
| Elind 222E | 3/1/2007 | 198,845 | 4 | 84.50 | 67.50 |
| Elart 227E | 3/7/2007 | 197,790 | 4 | 72.00 | 54.70 |
| Elati 232E | 3/15/2007 | 196,805 | 4 | 98.40 | 74.10 |
| Elind 223E | 3/21/2007 | 192,927 | 4 | 79.10 | 61.50 |
| Elart 228E | 3/28/2007 | 197,907 | 4 | 71.00 | 59.70 |
| | | | | | |
| Elati 233 | 4/6/2007 | 197,752 | 4 | 72.00 | 57.60 |
| Elind 224 | 4/11/2007 | 199,896 | 4 | 74.00 | 61.70 |
| Elart 229 | 4/19/2007 | 200,114 | 4 | 69.40 | 54.10 |
| Elati 234 | 4/25/2007 | 197,539 | 4 | 68.10 | 54.60 |
| | | | | | |
| Elind 225 | 5/3/2007 | 186,183 | 4 | 62.90 | 49.90 |
| Elart 230 | 5/10/2007 | 196,948 | 4 | 70.00 | 58.20 |
| Elati 235 | 5/16/2007 | 197,112 | 4 | 74.10 | 57.70 |
| Elind 226 | 5/23/2007 | 199,934 | 4 | 75.90 | 61.20 |
| Plant 009 | 5/30/2007 | 181,684 | 4 | 68.90 | 55.90 |
| | | | | | |
| | **Totals** | **3,217,060** | | **1,618.50** | **1,288.40** |

| | | | |
|---|---|---|---|
| *Additional Hours (Gross Vsl. Hrs.) Jan - May - Banana Ops.* | | 1157 | |
| Hrly Rate 15,000# Forklift | $ 24.25 | | |
| Trucks - Hold | 9 | | |
| Trucks - On Dock | 6 | | |
| Total Trucks | 15 | | |
| Hrly Rate 15,000# Forklift x 15 | | $ 363.75 | |

| | |
|---|---|
| Additional Cost x 15 Trucks x Add'l Hrs = | $ 420,786.00 |

**New York Container Terminal**
**Analysis of Change Of Business & Costs - For The 3 Months Ending 03/31/07**
**For Ecuadorian Container Line (ECL)**

Monday, April 30, 2007

**a. Increased Equipment Wear & Tear**
Increase in Gross Hours of Operations (to Oct - Dec 2006) 170%

| Year | Hours |
|------|-------|
| 2007 | 983.20 |
| 2006 | 363.80 |
| increase | 619.40 |

Estimated cost of additional equipment - $75,000 per month.

**b. Additional Land Usage**
The increased congestion/Traffic caused by the increased drop trailers and stuffers as well
as the additional waste containers has used up additional acreage needed for regular business.
Estimated cost of additional Land - $16,000 per month.

**c. Increased Injury Claims**
This area is difficult to quantify at this point but will no doubt result in additional WC premiums.

**d. Increased Warehouse Labor**
Our labor cost for warehouse operations has increased 100% over 2005 & 2006 (+$441.9k over '06). While
some of this cost has been recovered by increased revenue streams of stuffing / stripping (+$350k over '06)
it has not supplanted the increased costs.

|  | 2005 | 2006 | 2007 |
|--|------|------|------|
| Labor | $443.0k | $462.2k | $904.1k |
| Revenue | $173.6k | $313.0k | $662.7k |

**e. Waste Removal**
While our labor costs for March '07 remained almost constant compared to the same period in '06, the additional
space occupied by additional waste containers provided by our outside waste company still remains an issue.

|  | 2005 | 2006 | 2007 |
|--|------|------|------|
| Labor | $93.0k | $110.5k | $142.6k |

**f. Productivity**
The productivity of the Ocean Class Vessels for the first 3 Months compared to the Island class vessels has been
reduced by 21% Gross and 18% Net compared to the October through December 2006 vessels. This has resulted
in additional labor costs of almost $37,000.

**g. Terminal Congestion Additional Land Usage.**
Due to increased live loads, drop trailers, loss of X fence, congestion caused by truck lines - Land Lost - 4 Acres.

**h. Increased quantity of Swingloads**

**i. Repacking -** Two to Three times the number of repacking

# EXHIBIT 6

**Subject:** South Pacific Shipping v NY Container Terminal
**From:** "John R. Foster" <j.foster@waeschelaw.com>
**Date:** Mon, 16 Jul 2007 16:49:44 -0400
**To:** "Mark M. Jaffe" <mjaffe@hillbetts.com>
**CC:** "John R. Keough III Esq." <j.keough@waeschelaw.com>, "Cody D. Constable Esq."
<c.constable@waeschelaw.com>, "Ms. Shaleem Grant" <s.grant@waeschelaw.com>
**BCC:** Kevin Horvath <KHorvath@bonita.com>, Carlos Aguirre <CAguirre@Bonita.com>, Ed
Hickey <EHickey@bonita.com>, "John R. Foster Esq." <johnfoster42@gmail.com>

Mark:

1. As mentioned on the telephone a few minutes ago, South Pacific Shipping has been
told by its owner's P&I club that the club will not provide a letter of undertaking
as we requested. South Pacific has also made a similar request to its charterer's
P&I club, and we are still awaiting their decision. Once we know something further,
we will so advise you.

2. I confirm your advices that NYCT will not arrest the "Atlantic Ocean" when it
arrives this week. Also, the Terminal will work the vessel normally. Consequently,
there is no need to have court involvement concerning this ship.

Regards,

John R. Foster

Waesche, Sheinbaum & O'Regan, P.C.
111 Broadway
New York, NY 10006
Voice: (212) 227-3550
Fax: (212) 267-5767
email: j.foster@waeschelaw.com

# EXHIBIT 7

# HILL, BETTS & NASH LLP

ONE WORLD FINANCIAL CENTER
200 LIBERTY STREET, 26TH FLOOR
NEW YORK, NY 10281

(212) 839-7000
FAX: (212) 466-0514
WRITER'S DIRECT PHONE:

(212) 589-7524

July 19, 2007

*WITHOUT PREJUDICE*

VIA EMAIL AND MAIL

John R. Foster, Esq.
John R. Keough III, Esq.
Waesche, Sheinbaum & O'Regan, P.C.
111 Broadway, Fourth Floor
New York, NY 10006

Re:     South Pacific Shipping v. NYCT
        Our File No. 5027-9

Gentlemen:

We refer to our telephone discussion of yesterday, July 18, 2007, wherein you advised that your clients were endeavoring to arrange a Club letter from Charterers' P&I Club. We were out of the office for meetings for the bulk of the day and were disappointed to have returned this evening to find no word from you with regard to the Club letter or alternate security. Meanwhile, there is a further vessel call next week, and it appears that NYCT is being requested to extend further credit to your clients where it is clear that NYCT will continue to incur damages by reason of inadequate compensation for the costs and services now required.

The delay on the part of your clients in being able to furnish security via a Club letter or otherwise has introduced a new element to NYCT's perception of matters. The apparent inability of your clients to expeditiously furnish security suggests that your clients' creditworthiness is not what it was thought to be, and NYCT is deeming itself increasingly insecure as additional extra costs are being incurred. Clearly, where your clients have procured an Order requiring their vessels to be worked, a court is not likely to order NYCT to continue to render services in the face of NYCT's growing claims for losses each time a vessel calls at NYCT's Terminal.

Our client requests that the security issue be resolved either by Club letter, bond, or a letter of credit by the close of business on Tuesday, July 24, 2007. Otherwise, we are instructed to request the Court to order that at least $1 million in security be posted or to dissolve the Order. A form of letter of credit is enclosed to expedite matters.

{NY061102.1}

FLORIDA

601 BRICKELL KEY DRIVE, SUITE 500
MIAMI, FL 33131
(786) 425-9900 • FAX: (786) 425-9090

John R. Foster, Esq.
John R. Keough III, Esq.
July 19, 2007
Page 2 of 2

    We have also been asked to convey that the creditworthiness issue extends beyond the present dispute. NYCT is under new ownership and is now owned by pension fund investors who have the requirement of the steady cash flows necessary to meet pension obligations. For this reason, NYCT needs to maximize its cash flows, and customer creditworthiness is and will be a substantial factor in dealings with customers and determining whether to renew contracts. Your clients should guide themselves accordingly.

                              Sincerely,

                              Mark M. Jaffe

MMJ/bp
encl

{NY035732.1 }

STANDBY LETTER OF CREDIT NO. _____
DATE OF ISSUE: JULY ___, 2007

**ISSUING BANK:**                         **APPLICANT:**

**BENEFICIARY:**

NEW YORK CONTAINER TERMINAL, INC.
30 WESTERN AVENUE
STATEN ISLAND, NY 10303

**AMOUNT/CURRENCY:**

USD $1,000,000
ONE MILLION AND 00/100'S US DOLLARS

**DATE AND PLACE OF EXPIRY:**

JULY _____, 2008 AT OUR COUNTERS

AT THE REQUEST OF _____, WE HEREBY OPEN
THIS CLEAN (EXCEPT AS STATED HEREIN) IRREVOCABLE LETTER OF CREDIT NO.
_____ IN YOUR FAVOR UP TO AN AGGREGATE OF $1,000,000 U.S. DOLLARS,
AVAILABLE BY YOUR DRAFT(S) ON US AT SIGHT.

WE WARRANT TO YOU THAT ALL DRAFTS UNDER THIS CLEAN IRREVOCABLE LETTER OF
CREDIT WILL BE DULY HONORED UPON PRESENTATION OF YOUR DRAFT(S) DRAWN ON
US AND PRESENTED TO US AT OUR OFFICE LOCATED AT _____
ATTN: _____ ON OR BEFORE THE EXPIRATION DATE SET FORTH BELOW OR
FUTURE EXPIRATION DATE AS INDICATED BELOW. OUR OBLIGATION UNDER THIS
LETTER OF CREDIT IS THE INDIVIDUAL OBLIGATION OF [NAME OF BANK] AND IS IN NO
WAY CONTINGENT UPON REIMBURSEMENT WITH RESPECT THERETO, OR UPON OUR
ABILITY TO PERFECT ANY LIEN OR SECURITY INTEREST.

ALL DRAFTS MUST BE MARKED "DRAWN UNDER [NAME OF BANK] LETTER OF CREDIT NO.
_____ DATED JULY ____, 2007." PARTIAL DRAWINGS UNDER THIS LETTER OF
CREDIT ARE PERMITTED.

THIS CLEAN (EXCEPT AS STATED HEREIN) IRREVOCABLE LETTER OF CREDIT EXPIRES AT
THE CLOSE OF BUSINESS ON JULY ___, 2008. THIS CLEAN (EXCEPT AS STATED HEREIN)
IRREVOCABLE LETTER OF CREDIT SHALL BE AUTOMATICALLY EXTENDED WITHOUT
AMENDMENT FOR PERIOD(S) OF ONE YEAR EACH FROM THE CURRENT EXPIRY DATE
HEREOF, OR ANY FUTURE EXPIRATION DATE, UNLESS AT LEAST SIXTY (60) DAYS PRIOR
TO ANY EXPIRATION DATE, WE NOTIFY YOU BE REGISTERED MAIL AT THE ABOVE LISTED
ADDRESS THAT WE ELECT NOT TO CONSIDER THIS LETTER OF CREDIT RENEWED FOR
ANY SUCH ADDITIONAL PERIOD. UPON RECEIPT BY YOU OF SUCH NOTICE YOU MAY
DRAW ON US AT SIGHT FOR THE BALANCE REMAINING IN THIS LETTER OF CREDIT
WITHIN THE THEN APPLICABLE EXPIRATION DATE, NO STATEMENT REQUIRED.

THIS IS AN INTEGRAL PART OF LETTER OF CREDIT NUMBER: _____

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, THIS LETTER OF CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (2006 REVISION) INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION NO. 600.

_____
AUTHORIZED SIGNATURE

THIS DOCUMENT CONSISTS OF 2 PAGE(S)

{NY061103.1 }

# EXHIBIT 8

 **John Foster <johnfoster42@gmail.com>**

# South Pacific Shipping v New York Container Terminal

1 message

**John Foster <j.foster@waeschelaw.com>**     **Sat, Jul 21, 2007 at 10:40 AM**

To: mjaffe@hillbetts.com
Cc: emccoy@hillbetts.com, j.keough@waeschelaw.com, c.constable@waeschelaw.com, s.grant@waeschelaw.com
Bcc: "John R. Foster" <johnfoster42@gmail.com>

Mark:

1. Thanks for your letter/email of Thursday evening. Suffice it to say that we disagree with the Terminal's position, as well as your spin *e.g.*, that South Pacific has delayed in its dealings with the clubs or that South Pacific was obligated to do anything more than use its best efforts in seeking a club letter.

2. I called yesterday afternoon, but as you were unavailable I left a voicemail message. I then spoke with Gordon Arnott and Elizabeth McCoy. The points I made:

    a. I spoke yesterday with the representative of the charterer's P&I club, who said that the club rules did not cover this contractual dispute. (The owner's P&I club had previously said the same about their rules.) Consequently, the club would not provide a letter except on terms unacceptable to South Pacific.

    b. Given the parties' positions, it seemed best to get Judge Lynch involved. I called Chambers yesterday and arranged a conference for next Tuesday, July 24, at 11:00 am.

    c. From your letter it appears that you are under the mistaken impression that there is a court order of some sort in effect in the case. There is no such order, as a review of the docket sheet will show.

    d. That said, at next Tuesday's conference we will ask Judge Lynch for a) a TRO, and b) a hearing in the near future for a preliminary injunction.

3. If you have any questions about the above, please feel free to call John Keough or me.

Regards,

John Foster