Mark M. Jaffe (MJ-4855)
Elizabeth A. McCoy (EAM-8448)
Gordon S. Arnott (GSA-8612)
**HILL, BETTS & NASH LLP**
*Attorneys for Defendant*
NEW YORK CONTAINER TERMINAL, INC.
One World Financial Center
200 Liberty Street, 26th Floor
New York, NY 10281
(212) 839-7000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
SOUTH PACIFIC SHIPPING CO. LTD
(d/b/a Ecuadorian Line) and PACIFIC FRUIT, INC.

                Plaintiffs,

  - against -

NEW YORK CONTAINER TERMINAL, INC.

                Defendant.
------------------------------------------------------x

Case No. 07 Civ. 06317 (GEL)

**ANSWER AND
COUNTERCLAIMS**

      Defendant, by its attorneys Hill, Betts & Nash LLP, as and for its answer to the Complaint herein alleges upon information and belief as follows:

1.    Admits.

2.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

3.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint.

4.    Admits.

5.    Admits.

6.    Admits.

## FIRST CAUSE OF ACTION:
## BREACH OF MARITIME CONTRACT

7. Admits that South Pacific operates vessels engaged in the ocean carriage of bananas and other cargoes from ports in Ecuador to various points in the world, including the Port of New York. Denies and leaves to plaintiffs' proofs the extent to which such cargoes are "perishable."

8. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint.

9. Admits that NYCT is engaged in the business of marine terminal operation and stevedoring, including the berthing, discharge, and handling of vessels carrying cargoes on the navigable waters of the United States, and operates the New York Container Terminal (formerly known as the Howland Hook Container Terminal) (the "Terminal") at Staten Island, New York. Denies and leaves to plaintiffs' proofs the extent to which such cargoes are "perishable."

10. Admits. The Stevedoring Contract is attached as Exhibit A hereto.

11. Admits that the Stevedoring Contract provides, among other things, that the Terminal would provide terminal operating and stevedoring services to South Pacific, including the discharge and handling of cargoes of fruit from South Pacific's vessels, in accordance with the terms of the Stevedoring Contract. Denies and leaves to plaintiffs' proofs the extent to which such cargoes are "perishable."

12. Admits that on or about December 5, 2006, South Pacific signed a Confidential rate schedule dated October 1, 2005 ("the Confidential Rate Schedule"), attached as Exhibit B hereto.

13. Admits that on or about December 26, 2006, NYCT signed the Confidential Rate Schedule.

14. Admits, and also states that that this March 30, 2007 letter from NYCT's president and CEO, James J. Devine, to Carlos Aguirre, President and CEO of the Pacific Group, advised South Pacific, *inter alia*: 1) that the purpose of the letter was to alert South Pacific to the need to provide NYCT additional compensation due to South Pacific's change in vessel class from Ocean Class to Island Class and change in the quantities of palletized cargo; 2) that due to such changes, since the beginning of 2007, the costs associated with handling South Pacific's cargo had significantly increased; and 3) that the terminal required an additional $80,000 per month to compensate it for its additional costs.

15. Denies.

16. Denies.

17. Denies, but admits that South Pacific was informed that NYCT would have to decline to handle cargoes from South Pacific's vessels unless past due charges were paid.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20. Admits that South Pacific, d/b/a Ecuadorian Line, paid to NYCT the sum of $240,000 "without prejudice to [its] rights and defenses under [its] contract and otherwise, all of which are expressly reserved." Denies that the payment indicated that it

was made "under protest." Denies knowledge or information sufficient to form a belief as to the truth of the other allegations contained in paragraph 20 of the Complaint.

21. Admits that other vessels operated by South Pacific are scheduled to make regular calls on a weekly basis at the Terminal to discharge cargoes of bananas and other cargoes. Denies and leaves to plaintiffs' proofs the extent to which such cargoes are "fresh" or "perishable" and denies knowledge or information sufficient to form a belief as to the truth of the other allegations contained in paragraph 21 of the Complaint.

22. Denies.

23. Admits that Section II, Paragraph 2.1(1) of the Stevedoring Contract provides:

> "A single berth, located at the south end of the wharf, of adequate length to dock carriers' vessel is guaranteed upon arrival Wednesday, Thursday and Friday. On any other day, vessel will be given priority for a berth, and at least one crane will be made available. This guarantee would not apply to a second vessel simultaneously, however Contractor will make every effort to make a second berth available should Carrier require it. Actual vessel starting times are subject to the prevailing rules of the NYSA/ILA collective bargaining agreement."

24. Admits that South Pacific has not accepted NYCT's offer to guarantee South Pacific berthing and related services beginning on a Tuesday or a Wednesday, despite South Pacific's breach of the parties' contract. Denies the other allegations of paragraph 24 of the Complaint.

25. Admits that on or about May 23 and on various days thereafter, South Pacific was advised by the Terminal that beginning in August 2007 the Terminal would be available to work South Pacific's vessels only beginning on a Tuesday or a Wednesday. Denies the other allegations of paragraph 25 of the Complaint.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint.

29. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

30. Denies.

31. Denies.

32. Denies.

## SECOND CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH MARITIME CONTRACTS

33. With respect to paragraph 33 of the Complaint, repeats and realleges the responses to paragraphs 1 through 32 as if fully set forth herein.

34. Denies.

35. Denies.

## THIRD CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

36. With respect to paragraph 36 of the Complaint, repeats and realleges the responses to paragraphs 1 through 35 as if fully set forth herein.

37. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint.

38. Denies.

39. Denies.

40. Denies.

41.     Denies.

## FOURTH CAUSE OF ACTION:
## UNJUST ENRICHMENT

42.     With respect to paragraph 42 of the Complaint, repeats and realleges the responses to paragraphs 1 through 41 as if fully set forth herein.

43.     Denies.

### Affirmative Defenses

44.     **Failure to State a Claim.** The Complaint fails to state a claim for which relief can be granted.

45.     **Failure to Meet Requirements for Preliminary Injunction.** Plaintiffs have failed to satisfy the requirements for obtaining a Preliminary Injunction.

46.     **Arbitration.** The claims alleged are barred and instead must be arbitrated pursuant to Section XVII of the Stevedoring Contract, which provides, *inter alia*, that all disputes arising out of the Stevedoring Contract must be arbitrated in New York, New York.

47.     **Bad Faith and Unclean Hands.** Plaintiffs are not entitled to any equitable relief by reason of their improper conduct, bad faith and unclean hands in connection with events relevant to the claims they allege in this action.

48.     **No Third Party Beneficiary.** Plaintiff Pacific Fruit is not an intended third-party beneficiary of the Stevedoring Contract between South Pacific and NYCT.

49.     **Privity of Contract.** NYCT has no privity of contract with plaintiff Pacific Fruit.

50.     **Commercially Unreasonable Increase in Output.** The Stevedoring Contract, as modified by NYCT and South Pacific in December, 2006, constitutes an "outputs" contract under which NYCT is required to process South Pacific's outputs for the stated

contract price only to the extent that such outputs do not exceed commercially reasonable amounts. South Pacific's 2007 pallet output per vessel constituted a commercially unreasonable increase that NYCT was not required to process for the stated contract price or otherwise under the *pro forma* and terms of the Stevedoring Contract.

51.     **Fraud in the Inducement.** The Stevedoring Contract, as modified by NYCT and South Pacific in December, 2006 is void due to the fact that NYCT was fraudulently induced by South Pacific to enter the contract, and relied upon this fraudulent inducement in entering the contract.

52.     **Material Misrepresentation.** The Stevedoring Contract, as modified by NYCT and South Pacific in December, 2006 is void due to the fact that South Pacific made a material misrepresentation concerning a change in a material term of the contract, and relied upon this misrepresentation in entering the contract.

53.     **Mistake.** The Stevedoring Contract, as modified by NYCT and South Pacific in December, 2006 is void due to a mistake concerning a basic assumption about a material term of the contract, which South Pacific failed to correct, and on which NYCT relied in entering the contract.

54.     **Good Faith & Fair Dealing.** The Stevedoring Contract, as modified by NYCT and South Pacific in December, 2006 is void since South Pacific has violated the implied contract of good faith and fair dealing.

55.     **Unjust Enrichment.** Plaintiff South Pacific has been unjustly enriched by receiving goods and services without paying adequate compensation therefor.

56. **Failure to Mitigate.** Plaintiffs have failed to mitigate their damages, *inter alia* by South Pacific's refusal to accept NYCT's offer to guarantee South Pacific berthing and related services beginning on a Tuesday or a Wednesday.

## COUNTERCLAIMS

### First Counterclaim—Breach of Contract

57. NYCT and South Pacific modified the Stevedoring Contract by signing the Confidential Rate Schedule in December 2006.

58. The Confidential Rate Schedule states (on page 2):

> "The rates quoted [in the Confidential Rate Schedule] are predicated on a pallet friendly vessel which allows for the use of four electric fork lift trucks in the hatch and ship's crane with a minimum eight metric ton lifting capacity. At least one-half of each hatch square is to be pre-slung."

59. The Confidential Rate Schedule states (on page 1):

> "Based on current pro forma, vessel will have two days to complete work. Terminal reserves the right due to extraordinary and other circumstances to require the vessel to finish in one day."

60. The rates negotiated in the Confidential Rate Schedule, and the number of days allotted for the vessel to complete work at the Terminal, were predicated on South Pacific's continued use of "Island Class" vessels to deliver its cargoes to NYCT's Terminal and maintenance of a normal quantity of through-put of palletized cargoes.

61. NYCT and South Pacific contemplated that if South Pacific used vessels other than "Island Class" vessels to deliver its cargoes to NYCT's terminal, there would be an adjustment to the rate schedule to compensate for NYCT's increased costs, lower productivity, increased wear and tear on equipment, and other costs.

62. On or about January, 2007, South Pacific began using predominantly "Ocean Class" vessels to deliver its cargoes to NYCT's facility.

63. Ocean Class vessels are not "pallet-friendly" vessels, as required by the Confidential Rate Schedule.

64. Ocean Class vessels do not "allow for the use of four electric fork lift trucks in the hatch and ship's crane" as required by the Confidential Rate Schedule.

65. Ocean Class vessels do not meet the requirement that "at least one-half of each hatch square is to be pre-slung" as required by the Confidential Rate Schedule.

66. Due to the above failure to meet the requirements of the Confidential Rate Schedule, and because South Pacific's Ocean Class vessels carry approximately twice as many pallets as do its Island Class Vessels, Ocean Class vessels require NYCT to provide significantly more manpower, equipment, resources and services to unload and process than do Island Class vessels, and result in lost productivity.

67. Due to the above failure to meet the requirements of the Confidential Rate Schedule, Ocean Class vessels require NYCT to incur significantly more wear & tear on its equipment than do Island Class vessels.

68. Work on the Ocean Class Vessels cannot be completed within two days as required by the Confidential Rate Schedule, even despite the fact that NYCT has used its best efforts to complete the work within two days, has employed extra gangs to work the vessels, and has worked such gangs overtime.

69. The Stevedoring Contract, as modified by the Confidential Rate Schedule, contemplated that South Pacific would pay NYCT amounts additional to those specified in the Confidential Rate Schedule if South Pacific's vessels and cargo through-put did not comply with the requirements of *pro forma* which forms the basis of the Confidential Rate Schedule.

70.     South Pacific's refusal to pay such reasonable additional amounts to compensate NYCT for lost productivity and increased wear & tear on its equipment constitutes a breach of contract.

## Second Counterclaim—Breach of Outputs Contract

71.     Defendant repeats and realleges paragraphs 1 through 70 as if fully set forth herein.

72.     The Stevedoring Contract, as modified by the Confidential Rate Schedule, constitutes an "outputs" contract under which NYCT is required to process South Pacific's outputs for the stated contract price only to the extent that such outputs do not exceed commercially reasonable amounts.

73.     In the approximately seven years preceding the signing of the Confidential Rate Schedule in December, 2006, South Pacific used Island Class vessels to deliver its cargoes to NYCT's facility.

74.     These Island Class vessels normally tendered no more than an average of 2,250 non-containerized pallets of bananas, and NYCT processed approximately such quantity of non-containerized pallets during each vessel's berthing. Any quantity of non-containerized pallets of bananas in excess of this amount was discharged elsewhere.

75.     The Ocean Class vessels that South Pacific began predominately using in January 2007 carry approximately double the amount of pallets of bananas as the Island Class vessels, all intended to be discharged at the New York Terminal, and required NYCT to process approximately double the amount of pallets of bananas during each vessel's berthing.

76. South Pacific's 2007 pallet output per vessel constituted a commercially unreasonable increase that NYCT was not required to process for contract price stated in the Confidential Rate Schedule.

77. South Pacific's commercially unreasonable increase in pallet output per vessel constitutes a breach of contract.

78. South Pacific's refusal to pay such reasonable additional amounts to compensate NYCT for lost productivity and increased wear & tear on its equipment due to South Pacific's commercially unreasonable increase in pallet output per vessel constitutes a breach of contract.

### Third Counterclaim—Breach of Implied Contract of Good Faith and Fair Dealing

79. Defendant repeats and realleges paragraphs 1 through 78 as if fully set forth herein.

80. South Pacific's conduct constitutes a breach of the implied contract of good faith and fair dealing.

### Fourth Counterclaim—Unjust Enrichment/Quantum Meruit

81. Defendant repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

82. By wrongfully refusing to pay NYCT such reasonable additional amounts to compensate NYCT for 1) the fact that South Pacific's vessels did not comply with the requirements of the Confidential Rate Schedule and 2) South Pacific's commercially unreasonable increase in pallet output per vessel, South Pacific has been unjustly enriched.

### Sixth Counterclaim—Tortious Interference with Contracts

83. Defendant repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

84. At all material times herein, plaintiff South Pacific occupied and operated a refrigerated building at the Terminal for the receipt and storage of bananas and fresh fruit (the "Facility"); and upon information and belief, plaintiff Pacific Fruit was and is a shipper of fruit through such facility.

85. At all material times herein, plaintiffs knew that the capacity of the Facility to handle cargo was limited to approximately 1,750 pallets and that the maximum capacity of the Terminal to handle import shipments of bananas and fresh fruit on a single vessel call was approximately 2,250 pallets.

86. Plaintiffs knew or had reason to know at all material times herein that the discharge to the Terminal and Facility of more than 2,250 pallets would tax the ability of the Terminal to handle such cargos and require extraordinary measures such as extra labor hours, the necessity to store fruit in numerous containers outside the bounds of the facility and to cool such by Terminal reefer plugs or auxiliary power packs and that such operations would also require additional acreage, waste removal, equipment services, and the like.

87. At all material times herein, plaintiffs knew or had reason to know that the Terminal had and/or was soliciting other customers for the Terminal's preponderantly containerized operations and that the introduction to the Terminal of palletized cargos in excess of the capacity of the Facility and of the Terminal under normal operating mode

would impinge on and interfere with other operations at the Terminal and entail loss of productivity and extra expense on the part of the Terminal.

88. Notwithstanding, plaintiffs persisted in tendering cargos well in excess of 2,250 pallets per voyage and declined to adjust their vessel schedules to permit NYCT to properly service its other customers.

89. By such conduct, plaintiffs have wrongfully interfered and/or will wrongfully interfere with NYCT's ability to perform its contractual obligations to its other customers.

### Seventh Counterclaim—Tortious Interference with Prospective Business Relations

90. Defendant repeats and realleges paragraphs 1 through 89 as if fully set forth herein.

91. By such conduct, plaintiffs have wrongfully interfered and/or will wrongfully interfere with NYCT's business relationships with customers and prospective customers.

92. Plaintiffs have acted carelessly and with reckless disregard for the rights and business relationships of NYCT, and/or have used unfair and/or improper means to harass NYCT.

93. Plaintiffs' conduct has injured and/or will injure such business relationships of NYCT.

94. By such conduct, plaintiffs have tortiously interfered and/or will tortiously interfere with NYCT's business relationships causing NYCT loss of business reputation and other losses that cannot yet be quantified.

95. By reason of the matters set forth above, defendant has been damaged in the amount of at least one million ($1,000,000) dollars and continues to be damaged voyage by voyage as excess palletized cargo is tendered.

**WHEREFORE**, defendant prays that the Complaint be dismissed in all respects; that judgment be entered against plaintiffs and in favor of defendant as aforesaid stated; so long as plaintiffs are going to tender quantities in excess of 2,250 non-containerized pallets per voyage, that plaintiffs be ordered to adjust their vessel schedules so that the vessels arrive on a Tuesday or Wednesday, in order to permit NYCT to properly service its other customers; and that this Court grant such other and further relief as may be just and proper.

Dated: New York, New York
July 31, 2007

        HILL, BETTS & NASH LLP

        By: _____
        Mark M. Jaffe (MJ-4885)
        Elizabeth A. McCoy (EM-8448)
        Gordon S. Arnott (GSA-8612)
        Attorneys for Defendant
        One World Financial Center
        200 Liberty Street, 26th Floor
        New York, New York 10281-1003
        (212) 839-7000
        (212) 466-0514 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July 2007, a copy of the foregoing Answer and Counterclaims was served by e-mail and overnight mail upon plaintiffs' attorneys addressed as follows:

> John R. Keough, III
> John R. Foster
> Waeche, Sheinbaum & O'Regan
> 111 Broadway, 4th Floor
> New York, NY 10006
> (212) 227-3550

By: _____
Elizabeth A. McCoy (EAM-8448)
HILL, BETTS & NASH LLP
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel. (212) 839-7000
Fax (212) 466-0514