John R. Keough, III (JK 6013)
John R. Foster (JF 3635)
Cody D. Constable (CC 6659)
**WAESCHE, SHEINBAUM & O'REGAN, P.C.**
Attorneys for Plaintiffs
SOUTH PACIFIC SHIPPING CO. LTD.,
and PACIFIC FRUIT INC.
111 Broadway, 4th Floor
New York, New York 10006
(212) 227-3550

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X          ECF CASE
SOUTH PACIFIC SHIPPING CO. LTD. (d/b/a Ecuadorian
Line) and PACIFIC FRUIT INC.,
                                                                                   07 Civ. 6317 (GEL)(KNF)
                                         Plaintiffs,

        -against-

NEW YORK CONTAINER TERMINAL, INC.,

                                         Defendant.
------------------------------------------------------------------------X


## PLAINTIFFS' PRE-HEARING MEMORANDUM


JOHN R. KEOUGH, III                                 **WAESCHE, SHEINBAUM & O'REGAN, P.C.**
JOHN R. FOSTER                                               ATTORNEYS FOR PLAINTIFF
CODY D. CONSTABLE                                            111 BROADWAY, 4TH FLOOR
                                                              NEW YORK, NEW YORK 10006
                                                                   (212) 227-3550

On July 26, 2007, the Court entered a Temporary Restraining Order in this action. The Plaintiffs respectfully request that this TRO be extended as a preliminary injunction, pending the resolution of the dispute. The Court has scheduled August 8 and 9 to hear evidence concerning the Plaintiffs' application.

At the hearing, the Plaintiffs will produce three witnesses: Carlos Aguirre, Gary Whyte, and Michael Stamatis. Mr. Aguirre is the President of plaintiff Pacific Fruit, Inc. and of Ecuadorian Line Inc., the New York representative of plaintiff South Pacific Shipping Co. Ltd. Mr. Whyte is the Director of Northeast Operations of Ecuadorian Line. Mr. Stamatis is the Senior Vice President of Sales of Pacific Fruit.

Plaintiffs reserve the right to present the testimony of Kevin Horvath and other witnesses in rebuttal.

These witnesses will testify to the following facts:

Plaintiff Pacific Fruit is in the business of selling bananas and other fruit in the United States. The fruit is grown in Ecuador and then shipped to a port in New York and a port in California. The bananas are sold under the "Bonita" brand label. The New York metropolitan area is a major market for Pacific Fruit's fruit.

The fruit is shipped from Ecuador aboard vessels operated by South Pacific, an affiliate of Pacific Fruit. In addition to the usual contingencies of ocean-borne transportation such as weather, the South Pacific vessels destined for New York also face potential delays in crossing the Panama Canal. Based on the experience of decades, the shippers in Ecuador harvest the fruit and load it aboard South Pacific ships on a precise timetable so that the vessels can arrive at the Pacific side of the Canal for scheduled transit slots. Once a ship leaves the Canal on the Atlantic side, the time to New York is about 4 days.

The South Pacific ships discharge their cargo for the Northeast market at the Staten Island facilities of the defendant, New York Container Terminal, Inc. ("NYCT"). South Pacific has been using this terminal for about ten years,[1] and the "banana" warehouse facility there was constructed specifically for Pacific Fruit's cargo, and with South Pacific interests sharing the cost. There is no other terminal in the New York area that can handle such refrigerated fruit; the closest facilities are in Philadelphia.

In 1997 South Pacific and NYCT signed a contract by which NYCT agreed to provide terminal services to South Pacific's ships. NYCT was to bill South Pacific at a specified per box rate for palletized cargo. The contract had an initial term of eight years and was subsequently renewed.

During the initial period of this contract, South Pacific used two kinds of ships, which are referred to as "Island Class" and "Ocean Class" vessels. Both types are similar, with both capable of carrying containers on the deck and containers and/or palletized cargo below deck.

From July 1997 through December 1999, South Pacific used mostly Ocean Class vessels. From January 2000 through December 2006, South Pacific used mostly Island Class vessels. There was no objection by NYCT to the use of either type of ship.

The parties signed a new rate schedule to the contract in December 2006.

NYCT signed the new schedule on December 26, 2006. More than a month earlier, Gary Whyte of Ecuadorian Line advised James Devine, the CEO of NYCT, that South Pacific would be using Ocean Class vessels and increasing its volume of bananas to NYCT under the contract starting in January. Mr. Whyte provided details of the Ocean Class vessels

---

\* The terminal was previously known as the Howland Hook Terminal.

2

that operated earlier under the agreement, including a sample plan from 1999 of the vessel Indian Ocean showing its carriage of about 4,000 pallets. NYCT signed the contract and did not object then to the use of such vessels or request higher rates for their use.

Although South Pacific made increasing use of the Ocean Class vessels during 2007, as previously mentioned such ships are similar to the Island Class vessels. Island Class vessels continue to be used, however, particularly when Ocean Class vessels must be dry-docked for regular repairs and maintenance.

In 2007 Pacific Fruit began discharging more cargo at NYCT under the contract, in volumes similar to those sent earlier on the Ocean Class vessels in 1997-99.

Because NYCT charges South Pacific on a per box plus extra costs basis, one would expect that NYCT welcomes the increased volume. Instead, in March 2007 Mr. Devine advised South Pacific that due to NYCT's increased expenses from the change in the "class of Vessel," the Terminal wanted an extra $80,000 per month. If South Pacific refused to pay this extra money, the Terminal would refuse to work the South Pacific ships. In May South Pacific paid $240,000, i.e., three months' worth, under protest, but has since refused to pay any further non-contractual "charges."

As a result of the harvesting/shipping/Panama Canal schedule, South Pacific's ships have nearly always arrived in New York towards the end of the work week. Consequently, South Pacific sought, and NYCT gave, the following guarantee in the contract: "A single berth, located at the south end of the wharf, of adequate length to dock Carrier's vessel is guaranteed upon arrival, Wednesday, Thursday and Friday."

The Terminal's problem is that earlier this year it signed a contract with at least one container-ship company, APL Limited, to increase its business by 50%. The Terminal has

agreed to allow the new customers' ships to arrive at the end of the week. While the new ships cannot use South Pacific's wharf (the water is too shallow there for a container ship), NYCT would have to hire additional longshoremen to work both ships at the same time. Instead, NYCT plans to give South Pacific's labor to work the new customers' ships.

As a consequence, in June Mr. Devine advised South Pacific that its ships could no longer be worked on Thursdays and Fridays. If South Pacific wanted its ships to be worked on arrival, then it had to get them to the Terminal sooner.

Given the harvesting/shipping/Panama Canal schedule, South Pacific cannot ensure that its ships can arrive earlier in the week. And with cargoes of perishable fruit destined for Pacific Fruit and its customers, the plaintiffs are unwilling and unable to have the vessel sit around while NYCT refuses to honor the contract's guaranteed days. In response to NYCT's demand, South Pacific brought this action to enforce the terms of the contract. Pacific Fruit joined in the action to assert its interest in having its bananas and other fruit delivered in a timely manner.

On July 26 the Court entered a temporary restraining order preserving the status quo. The Plaintiffs request that the order be extended to cover the duration of the lawsuit.

\* \* \* \* \*

The standard applicable to this application is straightforward: "To obtain a preliminary injunction, plaintiff must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 114 (2d Cir. 2006).

Failure to maintain the status quo will result in irreparable harm to plaintiffs. NYCT's refusal to discharge the perishable cargo from South Pacific's vessels will cause loss of the bananas and other fruit and will prevent its delivery to Pacific Fruit's New York area customers. Unable to deliver its fruit to market, Pacific Fruit will lose market share and the goodwill established in its business. For South Pacific, the Terminal's refusal to discharge will leave the carrier in breach of its contracts of carriage and with no place in the metropolitan area to discharge the ripening fruit.

The plaintiffs are also likely to succeed on the merits. The governing contract, which was amended as recently as last December, is unambiguous and guarantees terminal service on Wednesday, Thursday, and Friday. There are no contractual restrictions on the type of ship that South Pacific can bring in. There are no restrictions on the volume of cargo that South Pacific can bring in. There are no provisions for passing along the extra charges that NYCT is now claiming; they are already covered in the per box rate and otherwise in the contract. The truth of the matter is that NYCT has a new, larger, and more profitable customer and wants to give it preference over South Pacific. Whether the Terminal is entitled to do so is for later resolution in this action. In the meantime, the Court should preserve the status quo by extending its July 26 Order.

Dated:  New York, New York
        August 7, 2007

                                                                   **WAESCHE, SHEINBAUM & O'REGAN, P.C**.
Attorneys for the Plaintiffs

By:     /s/
     John R. Keough, III (JK 6013)
     John R. Foster (JF 3635)
     Cody D. Constable (CC 6659)
     111 Broadway, 4th Floor
     New York, NY 10006
     (212) 227-3550